J. K. P. THOMPSON, Appellant, v. THE INDEPENDENT SCHOOL DISTRICT OF ALLISON IN THE COUNTY OF LYON, *et al.*

**Municipal Debt:** CONSTITUTIONAL LAW: *Presumptions.* A judgment against a school district, on orders issued in payment of other valid orders, though rendered at a time when the outstanding obligations of the district are in excess of the constitutional limit, does not create an indebtedness, within the inhibition of the constitution. It will be presumed, in the absence of evidence to the contrary, that the debt was within the maximum limit when the orders were issued.

**FRAUD AND COLLUSION:** *Default judgment.* The fact that a judgment by default was rendered against a school district at a time when its outstanding obligations were largely in excess of the constitutional limit, does not show that it was obtained by fraud and collusion.

**EXCESSIVE INTEREST:** *Bonds.* The fact that bonds issued by a school district in payment of a valid judgment against it, drew semi-annual interest, at ten per cent. per annum, and that the aggregate amount thus agreed to be paid, in excess of the judgment, creates an indebtedness beyond the constitutional limit, will not prevent recovery of the amount of the bonds, with semi-annual interest at six per cent. per annum.

**Taking Effect of Statutes.** Acts Seventeenth General Assembly, chapter 132, authorizing any school districts against which judgments have been rendered "prior to the passage of this act," to issue bonds in payment thereof, includes judgments rendered between the approval of the act and the time it took effect.

*Appeal from Lyon District Court.*—HON. G. W. WAKE-
FIELD, Judge.

TUESDAY, MAY 11, 1897.

ACTION at law to recover an amount alleged to be
due on a certain judgment, or on bonds issued for its
payment. There was a trial by the court, and a
judgment in favor of the defendants for costs. The
plaintiff appeals.—*Reversed.*

*Parsons & Riniker* for appellant.

*McMillan & Dunlap* for appellees.

ROBINSON, J.—On the fourteenth day of May, A.
D. 1878, the district court of Lyon county rendered
judgment in favor of the plaintiff and against the
independent district of Riverside for the sum of eight
hundred and sixty-eight dollars and eighty cents, with
interest thereon, and for costs. On the sixteenth day
of July in the same year, the district issued to the
plaintiff, for the purpose of satisfying the judgment,
its four negotiable bonds for the aggregate sum of
eight hundred dollars, and judgment orders for the
remainder due on the judgment. The plaintiff sold the
bonds to a capitalist of Minnesota, and ten or twelve
years after, re-acquired them by purchase. The
independent district of Riverside was organized in
September, 1872, and continued to exist until the
year 1885, when the defendants, the independent dis-
trict of Allison and the independent district of Jack-
son, were organized from its territory, and became
responsible for its liabilities. The judgment has never
been paid, excepting by the issuing of the bonds and
orders specified. The plaintiff claims to own the
judgment and bonds, and coupons attached, and

demands judgment thereon for the sum of two thousand, seven hundred and twenty-six dollars and twenty-five cents, with interest and costs. The defendants allege that the judgment was obtained through fraud and collusion between the plaintiff and the independent district of Riverside and its officers, by reason of which the judgment is not a just and valid claim against the defendants; that when the bonds were issued the independent district of Riverside did not have authority to issue them; and that the judgment was rendered and the bonds were issued in violation of section 3 of article 11 of the constitution of this state, which forbids any county or other political or municipal corporation to become indebted to an amount exceeding five per cent. of the value of the taxable property within such corporation.

I.   The evidence is not sufficient to show that the judgment was obtained through fraud and collusion. It was rendered by default, at a time when the outstanding obligations of the district were largely in excess of the constitutional limit, but it was rendered on orders all of which were issued in lieu or in payment of other orders. What the indebtedness of the district was when the original orders were issued is not shown; and we must presume it did not exceed the authorized limit, and that the orders were valid. If that was the case, the orders issued in lieu of them did not create an indebtedness, within the meaning of the constitutional inhibition, and none was created by the rendition of the judgment. *Edmundson v. School District*, 98 Iowa, 639 (67 N. W. Rep. 671). There is no other evidence of fraud or collusion in obtaining the judgment, and that was insufficient to show that the judgment was wrongfully obtained. *Independent District v. Miller*, 92 Iowa, 677 (61 N. W. Rep. 376).

II.   The defendants do not seriously contend that the judgment was illegal, but insist that it was fully satisfied by the issuing of the bonds and orders in payment of it, and that the bonds are void because not issued by authority of law.   The resolution of the board of directors under which the bonds were issued to the plaintiff shows clearly that they were so issued "for the purpose of satisfying said judgment," and the court was fully authorized to find that they were received in payment of it.   The claim that they were not authorized by law is based upon the fact that chapter 132 of the Acts of the Seventeenth General Assembly, under which they were issued, was passed by the general assembly and approved by the governor before the judgment in question was rendered, and that the act only authorized "any school district against which judgments have been rendered prior to the passage of this act" to issue such bonds.   The act was approved March 25, 1878, while the judgment, as we have stated, was not rendered until the fourteenth day of the next May.   Therefore, the question to be determined on this branch of the case is, to what time do the words "prior to the passage of this act," contained in the statute, refer?   The question is not an open one. Section 1249 of the Code of 1851 provided that the homestead of the head of a family might be sold on execution for debts contracted "prior to the passage of this law."   That was approved February 5, 1851, but did not take effect until the first day of the next July. In *Charless v. Lamberson*, 1 Iowa, 442, it was held that the words "prior to the passage" related to the time the act took effect, and not to the time of its passage. In *Rogers v. Vass*, 6 Iowa, 408, it was said that the clause "at the time of the passage of this act," and similar expressions in statutes, have legal reference to the time of their taking effect.   See, also, *Bennett v*

*Bevard*, 6 Iowa, 82; *City of Davenport v. Davenport &
St. P. R'y Co.*, 37 Iowa, 624; Sutherland, St. Const., sec-
tions 107, 160. The general assembly did not provide
the the statute in question should take effect by publi-
cation, and it did not take effect until the fourth day of
July, 1878. Constitution, Iowa, art. 3, section 26; Code,
section 34. As the judgment in controversy was
rendered before that time, authority to issue bonds in
payment of it was given by the statute.

III. The judgment drew interest at the rate of
six per cent. per annum. The bonds were payable ten
years after their date, and provided for the payment
of interest at the rate of ten per cent. per annum, pay-
able semi-annually, on the presentation and surrender
of coupons thereto attached. It thus appears that the
bonds provided for the payment of thirty-two dollars
each year, in semi-annual payments, or for an aggre-
gate of three hundred and twenty dollars by the time
the bonds matured, in addition to the amount
required by the judgment. The excess thus
provided for amounts at this time to more than
six hundred dollars. It is clear that, to the extent
of such excess, the bonds purported to create a liabil-
ity in addition to that represented by the judgment;
but whether it was an indebtedness, within the mean-
ing of the prohibition of the constitution, or whether
it may have been regarded as pertaining to the ordi-
nary expenses of the district, and within its current
revenues, under the rule stated in *Grant v. City of
Davenport*, 36 Iowa, 396, and considered in *Dively v.
City of Cedar Falls*, 27 Iowa, 233; *City of Council
Bluffs v. Stewart*, 51 Iowa, 392 (1 N. W. Rep. 628);
*Anderson v. Insurance Co.*, 88 Iowa, 594 (55 N. W. Rep.
348); and *Tuttle v. Polk*, 92 Iowa, 436 (60 N. W. Rep.
733),—is a matter which has not received any atten-
tion in this case, and which we do not determine. If
it be true that it was an unauthorized indebtedness

that would not prevent a recovery for the amount of the bonds, and semi-annual interest thereon at the rate of six per cent. per annum. The legal is readily distinguished from the illegal part of the contract, and judgment may be given on the part which is legal. Clark, Cont., 471. See, also, *McPherson v. Foster*, 43 Iowa, 72. It follows from what we have said that the district court erred in denying the plaintiff relief on the evidence submitted, and its judgment is therefore REVERSED.