## The State, ex rel. Dreibelbiss, *v.* Berghoff, Mayor of the City of Fort Wayne.

[No. 19,667.    Filed April 10, 1902.]

MUNICIPAL JUDGES.—*Creation of Office.*—*Appointment by Governor.*—*Amendment of Ft. Wayne Charter.*—Under §1 of the act of March 7, 1901 (Acts 1901, p. 132) construed with §§42, 45, and 46 of the act of 1893, as amended by the act of March 7, 1901 (Acts 1901, pp. 132, 134, 135), the office of municipal judge in certain cities did not come into existence until two days after the first election provided for by the act, thus causing a vacancy in such office, which the Governor had power to fill as against a judge attempted to be elected at such first election. *pp. 349–354.*

SAME.—*Validity of Act Creating Office Two Days After Election.*—The provisions of the act of March 7, 1901 (Acts 1901, pp. 132, 134, 135), making the office of municipal judge in cities of over 35,000 and under 49,000 inhabitants come into existence two days after the first election provided for by the act, and providing that such judge should not be elected until the second of such elections, are valid, though such provisions necessarily cause a vacancy which can only be filled by appointment. *pp. 354–358.*

CONSTITUTIONAL LAW.—*Motive of Legislature Not Subject to Judicial Inquiry.*—The motive of the legislature in enacting that the office of municipal judge in certain cities should come into existence two days after the first general city election therein provided for, and that such judge should not be elected until the second of such city elections, four years after the creation of the office, and the policy or expediency of these provisions, are not subject to judicial inquiry in determining the validity of such provisions. *p. 358.*

From Allen Circuit Court; *E. O'Rourke*, Judge.

Mandamus by State on the relation of Robert B. Dreibelbiss, against Henry C. Berghoff, mayor of the city of Ft. Wayne. From a judgment in favor of respondent, relator appeals. *Reversed.*

*R. S. Taylor, J. B. Harper, W. Leonard, E. Leonard, W. J. Vesey, O. N. Heaton* and *W. L. Taylor*, Attorney-General, for appellant.

*J. M. Barrett, S. L. Morris, A. Zollars, C. H. Worden, F. E. Zollars, H. Colerick* and *W. H. Shambaugh,* for appellee.

DOWLING, J.—The relator, claiming title to the office of municipal judge of the city of Fort Wayne, by the appointment of the Governor, tendered to the appellee, the mayor of said city, his official bond properly executed, with sufficient sureties, and demanded that such bond be approved. His demand was refused, and he sued out of the Allen Circuit Court a writ of mandamus requiring the appellee to approve the said bond, or show cause why he should not be compelled to do so. The appellee filed his return and answer to the verified application and alternative writ, and the appellant demurred thereto for want of sufficient facts to constitute a defense and excuse for such refusal to approve said bond. The demurrer was overruled, and, the appellant refusing to plead further, judgment was rendered against him. From that judgment he appeals, and the error assigned is the ruling upon the demurrer.

More particularly stated, the facts set forth in the application and alternative writ were these: On May 9, 1901, the relator was appointed and commissioned, by the Governor of this State, municipal judge of the municipal court of the city of Fort Wayne, Indiana, to fill a vacancy in said office beginning on said 9th day of May, 1901, and continuing until the first Tuesday of May, 1905, and until his successor should be elected and qualified; the relator took the oath of office, and presented to the appellee, who was the mayor of the city of Fort Wayne, his official bond, in the penalty prescribed by the statute, conditioned according to law, with good and sufficient sureties, duly acknowledged, and asked the appellee to approve the same; the relator possessed the statutory qualifications for such municipal judge, but the appellee, without legal excuse, refused to approve the said bond.

The return and answer admitted that the appellee was the mayor of the city of Fort Wayne, and alleged that on April 3, 1901, George W. Louttit was nominated as a candidate for the office of municipal judge of the municipal court of said city, by a convention of the democratic party, which party cast more than a majority of the total vote of said city at the last preceding election; that a certificate of his nomination was duly filed with the clerk of said city before the general election which was held on the first Tuesday of May, 1901; that the name of the said Louttit was printed upon the official ballot for said election; that said candidate was qualified for, and was eligible to the said office; that at said city election, he was elected to said office, receiving more than a majority of all the votes cast; that afterwards the said Louttit received a legal certificate of his election, and accepted said office, executed his bond with sufficient sureties, and took the oath of office; that said bond was approved by the appellee as such mayor; that thereupon Louttit entered into the possession of the said office, and proceeded to discharge its duties, and ever since has continued to do so; and that all of these things occurred before the presentation of the bond of the relator. The return and answer further aver that, at the time of the appointment of the relator, there was no vacancy in the office of municipal judge of the city of Fort Wayne. This last averment may perhaps be regarded as a conclusion from the facts previously stated in the return and answer.

The demurrer to this return presents the question of the validity and proper construction of the statutes creating the office of municipal judge of cities having a population of more than 35,000 and less than 49,000 inhabitants, according to the last census of the United States before the year 1901. Acts 1901, pp. 131 to 138.

Section 1 of the act of March 7, 1901, Acts 1901, p. 132, amending §1 of an act to amend §§2, 11, 12, 67, and 77 of an act for the incorporation of cities having a population of

more than 35,000 and less than 49,000 inhabitants, approved March 3, 1893, provides that the elective officers of such cities shall be a mayor, municipal judge, city clerk, and councilmen; that the general elections of such cities shall be held, as in said act provided, on the first Tuesday in May, 1901, and on the first Tuesday in May in every fourth year thereafter, at which general election there shall be elected a mayor, municipal judge and city clerk, all of whom, when so elected, shall hold their offices, respectively, for four years, and until their successors are elected and qualified; but that no municipal judge shall be elected until the general election to be held in May, 1905.

By another act approved March 7, 1901, §42 of said act for the incorporation of cities having a population of more than 35,000 and less than 49,000, approved March 3, 1893, was so amended as to provide for the election of a mayor and city clerk in such cities on the first Tuesday in May, 1901, and on the first Tuesday in May in every fourth year thereafter, the terms of such officers to begin at 12 o'clock, noon, on Thursday next after their election, and to continue four years, or until their respective successors should be elected and qualified, except as in said act otherwise provided.

By the same act, §45 of the said act of March 3, 1893, was amended so as to provide, among other things, that the mayors of such cities should continue to exercise their judicial authority until 12 o'clock noon on the 9th day of May, 1901, and until a municipal judge should be appointed and qualified under said act.

Section 46 of the act of March 3, 1893, was also amended by the said act of March 7, 1901, so as to read as follows: "Section 46. On and after 12 o'clock noon of the 9th day of May, 1901, the judicial power of such city shall be vested in a city court; the officers thereof shall be one judge, a clerk and a bailiff. The style of such court shall be 'The Municipal Court of the City of —————————', accord-

ing to the name of such city. * * * The mayors' courts of such cities are hereby abolished on and after said 9th day of May, 1901, and such mayors shall turn over to the judges of such courts, all books, papers, dockets, documents and property relating and belonging to such mayors' courts. * * * The municipal judge, as hereinbefore provided, shall be elected on the first Tuesday of May, 1905 A. D., and on the first Tuesday in May, in every fourth year thereafter, and shall serve for a term of four years. The office of municipal judge, shall, however, from said 9th day of May, 1901, until the first Tuesday in May, 1905 A. D., be filled by appointment by the Governor of Indiana, whose duty it becomes, on, or immediately after, the 9th day of May, 1901, to select some attorney at law, of good standing, who shall have been a resident in such city for three years next previous to his selection, to serve as municipal judge until such day of election. The term of said judge shall begin immediately upon his appointment, and he shall serve until his successor is elected and qualified. He shall execute a bond, payable to the State of Indiana, in the penal sum of $2,000, with good and sufficient surety, to be approved by the mayor, and filed in the office of the city comptroller, conditioned for the faithful and honest discharge of the duties of his office." Both of these amendatory acts contained emergency clauses, and were approved on the same day. The act amending §§42 and 46 of the act of 1893 appears later in the printed acts of 1901, than the act amending §1 of the act of 1893.

These acts created the office of municipal judge in the class of cities to which the city of Fort Wayne belongs. They declared that the office should not come into existence until May 9, 1901, at 12 o'clock noon. All the civil and criminal jurisdiction previously possessed by the mayor under the act of March 3, 1893, was continued in that officer until that time. The general elections for city officers, were

required to be held on the first Tuesday of May, 1901, and on the first Tuesday of May in every fourth year thereafter. As the office of municipal judge did not come into being until two days after the general city election held on the first Tuesday of May, 1901, and as the next general. city election could not be held until the first Tuesday in May, 1905, a vacancy in the office of municipal judge occurred on May 9, 1901, which the Governor was expressly authorized by the act to fill by appointment. He exercised that power, and the relator, who was appointed by him to fill the vacancy, had the right to demand of the appellee, as the mayor of the city of Fort Wayne, the approval of his official bond, unless the provisions of the acts, under review, were invalid, because of repugnancy between the proviso in §1 as amended and the body of the act, or were in conflict with the Constitution of the State.

Counsel for appellee contend that a repugnancy does exist between the proviso of the act of March 7, 1901 (Acts 1901, p. 132), and the body of that act, and that the body of the act, amending §1, must control; they also insist that the acts of March 7, 1901, are in conflict with the Constitution of the State because they authorize the appointment of a judge of a court, when the office should be filled by an election by the people.

It may be admitted that there is some ambiguity in §1 of the act of March 7, 1901, as amended. The meaning of the section, however, is plain, and the intention of the legislature unmistakable. The several clauses of the section, although apparently contradictory, may be reconciled without difficulty. The first clause declares what officers shall be elective. The second fixes the dates at which all future general city elections shall be held. The next states what officers shall be elected at such general elections, and the terms of such officers. The proviso qualifies these general provisions by declaring that no municipal judge shall be elected until the general election to be held in May, 1905.

A proviso is generally held to repeal a preceding and inconsistent provision. Endlich Int. of Stat., §§183-189. While the act mentions a municipal judge as one of the city officers, it does not create the office, nor define the powers or duties of its incumbent. Even if §1 was the only portion of the act to be considered, we would feel compelled, under the well established rules of statutory construction, to uphold the entire section, and to decide that the proviso is a qualification of the preceding provisions, and plainly manifests the legislative intent that no election for municipal judge should take place until 1905. Sutherland Stat. Const., §221; Potter's Dwarris on Statutes, 117; Bishop's Statutory Crimes, §§57, 58; *State* v. *Myers,* 146 Ind. 36; Endlich Int. of Stat., §§183, 186, 189.

But it is to be observed that §1 of the act of March 7, 1901 (Acts 1901, p. 132), does not stand alone, and that it is to be construed in connection with §§42, 45, and 46, of the act of 1893, as amended by the act of March 7, 1901. Acts 1901, pp. 132, 134, 135. So interpreted, there can remain no doubt that the legislature intended to create the office of municipal judge on May 9, 1901, and not before, and that no election for that office should take place until the first Tuesday of May, 1905.

It is said in *Lime City, etc., Assn.* v. *Black,* 136 Ind. 544, 553, that: "It is a well established rule in the construction of statutes, that the court will not presume that the legislature intended any part of a statute to be without meaning; but it is also a rule equally well settled, that every part of the statute must be viewed in connection with the whole, so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. Sutherland on Stat. Const., §325." If the proviso in the act amending §1 of the act of 1897, amending the act of March 3, 1893, be rejected, the two acts of March 7, 1901, when construed together must be held to create the office of municipal judge on May 9, 1901, and not before.

The act of March 3, 1893 (Acts 1893, p. 202, §4099 Burns 1894), of which the two acts of March 7, 1901, *supra,* are amendments, vested the judicial authority in the mayor; the office of municipal judge was not known to that act; and the creation of that office was, exclusively, the work of the amendatory acts of 1901, found on pages 132, 134 and 135 of the acts of 1901. It follows that, if the acts of 1901 are valid, there could be no election for the office of municipal judge until the first Tuesday in May, 1905.

Counsel for appellee assert that so much of the act of March 7, 1901, as declares that the office of municipal judge shall come into existence May 9, 1901, that the first election to fill the same shall take place on the first Tuesday of May, 1905, and that the Governor shall fill the vacancy for the intervening period, is in conflict with §1, article 1, of the State Constitution, with §18, article 5, and with §§1 and 16 of article 7 of that instrument.

It is assumed in the argument for the appellee that all judges of all courts must be elected by the people, and the several sections of the Constitution, just mentioned, are referred to in support of this proposition.

The necessity for any discussion of the constitutional question may well be doubted. For the purpose of the decision of this case, it makes no différence whether under the State Constitution all judicial officers must be elected, or whether some of them may be appointed. It may be assumed that the office of municipal judge is an elective office. The real point of inquiry is, was there a vacancy in the office of municipal judge of the city of Fort Wayne on May 9, 1901? If a vacancy existed at that time, the power of the Governor to fill the vacancy by appointment admits of no dispute. Constitution, §18, article 5. Whether a vacancy in the office of municipal judge existed depends upon the answers which may be made to another question: Had the legislature the power to fix the time when the act creating the

office should take effect and become operative? All the authorities affirm that it had. The rule and limitation of the Constitution, §28, article 4, is that no act shall take effect until the same shall have been published and circulated in the several counties of this State by authority, except in case of emergency, which emergency shall be declared in the preamble or in the body of the law. Subject to this restriction, and to the further limitation that the taking effect of no law shall be made to depend upon any authority except as provided in the Constitution (§25, article 1), the authority of the legislature to fix the time when any act shall take effect cannot be questioned.

The general rule is thus stated in Sutherland on Stat. Con., §107: "The power to enact laws includes the power, subject to constitutional restrictions, to provide when in the future, and upon what conditions or event, they shall take effect. Where a particular time for the commencement of a statute is appointed, it only begins to have effect and to speak from that time, unless a different intention is manifest, and will speak and operate from the beginning of that day."

And in Endlich on Interp. of Stat., §499, it is said that: "An act may be passed to take effect not only at a future day certain, but also upon the happening of a future contingency. In the former case, the act takes immediate effect on the day fixed. * * * And until the day when an act is to take effect arrives the law has no force, even as notice to the persons to be affected by it." Const., Art. 4, §28; *Rice* v. *Ruddiman,* 10 Mich. 125; *Price* v. *Hopkins,* 13 Mich. 318; *Larrabee* v. *Talbott,* 5 Gill (Md.) 426, 46 Am. Dec. 637, 645; *Commonwealth* v. *Fowler,* 10 Mass. 290; *People* v. *Johnston,* 6 Cal. 673; *State, ex rel.,* v. *Wells,* 144 Ind. 231, 236; *Clem* v. *State,* 33 Ind. 418, 423; *State, ex rel.,* v. *Menaugh,* 151 Ind. 260, 43 L. R. A. 408, 418; *State, ex rel.,* v. *Mount,* 151 Ind. 679; 23 Am. & Eng. Ency. of Law, 225.

The objection that, before the time fixed for the taking effect of the act, two elections would occur, at either of which a municipal judge might be elected, is not in accordance with the facts. The office did not come into existence until two days after the general city election of May 7, 1901. The next general city election will not occur until the first Tuesday of May, 1905. The general city elections are the only elections which can be considered, and no such election occurred after the act took effect, or can occur until May, 1905. An election of a municipal judge before May, 1905, would be a nullity. *People* v. *Johnston,* 6 Cal. 673.

The power of the legislature to fix the length of the term of office of a municipal judge, subject only to the constitutional restriction that it cannot exceed four years, is indisputable. Legislative authority to fix the times and intervals at which general city elections shall be held is equally well established. Such elections may be required to be held every year, every two years, every three years, or every four years; and an interval of four years is quite as regular and as fully within the competence of the legislature to establish as an interval of one year.

The motives of the legislative body in enacting that the office of municipal judge should come into existence two days after the general city election of 1901, and that future general city elections should be held on the first Tuesday of May, 1905, and on the first Tuesday of May in every fourth year thereafter, are not proper subjects of judicial examination. Neither can the court consider the policy or expediency of these regulations. *State, ex rel.,* v. *Kolsem,* 130 Ind. 434, 14 L. R. A. 566; *Parker* v. *State, ex rel.,* 132 Ind. 419; *State, ex rel.,* v. *McClelland,* 138 Ind. 395; *Townsend* v. *State,* 147 Ind. 624, 37 L. R. A. 294, 62 Am. St. 477; *City of Chicago* v. *Manhattan Cement Co.,* 178 Ill. 372, 45 L. R. A. 848, 69 Am. St. 321.

For the reasons herein stated, we are constrained to hold that the acts of March 7, 1901, creating the office of munic-

ipal judge, and fixing the time for the election of that officer, were valid, and consequently that the facts stated in the answer and return to the alternative writ and the complaint, were insufficient to constitute a defense to that application, and that the court erred in overruling the demurrers to such answer and return.

Judgment reversed, with instructions to sustain the demurrers to the answer and return, and for further proceedings not inconsistent with this opinion.