### · Texana Scales et al. v. Elizabeth Marshall

#### No. 1152. Decided December 18, 1902.

**1.—Mandate—Limitation—Statute Construed.**

The statute (Acts of 1901, chapter 54) requiring mandates from the appellate courts to be taken out within twelve months from date of judgment applies to a plaintiff who, having been cast in the suit in the trial court, has appealed and secured a reversal of the judgment against him and had the cost of appeal taxed against the opposite party. (Pp. 140-142.)

**2.—Statute—Limitation Taking Effect from "Passage."**

A statute limiting the time for a prescribed act and giving effect to such limitation, as to existing conditions, from the date of the "passage" of the law, will be understood as meaning by "passage" the date when the law goes into effect, unless something appears to indicate a different intent. (Pp. 142, 143.)

**3.—Same—Mandate—Limitation of Time—Effect on Pending Cases.**

The statute limiting the time for taking out mandate in reversed and remanded cases to twelve months from judgment, and, as to cases previously reversed, to twelve months from the "passage" of the act, gave an appellant who had procured reversal in a cause then pending twelve months from the time such act went into effect in which to take out mandate. (Pp. 142-144.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Johnson County.

*Frost, Neblett & Blanding,* for appellants.

*L. B. Davis,* for appellee.

WILLIAMS, Associate Justice.—The Court of Civil Appeals for the Fifth District presents the following certificate for a decision of the questions stated:

"Texana Scales, joined by her husband, brought suit in the District Court of Johnson County against Elizabeth Marshall, in trespass to try title, to recover a tract of land situated in said county. A trial resulted in a judgment in favor of the defendant and the plaintiffs appealed to this court, where on November 24, 1900, the judgment was reversed and the cause remanded, the costs of appeal being taxed against the appellee. Scales v. Marshall, 60 S. W. Rep., 336. A motion for rehearing was filed by the appellee and was overruled on Jan-

uary 5, 1901. No further action was taken by either party until June 30, 1902, when the appellants paid the costs of appeal and mandate was issued on the same day at their instance and request. The mandate was filed in the trial court on July 4, 1902. On September 17, 1902, the appellee, Elizabeth Marshall, filed a motion in this court setting up the facts above stated and praying for the recall of said mandate. The motion was based upon art. 976a, chap. 54, Acts 1901, which reads as follows: 'No mandate shall be taken out of the Supreme Court, or Courts of Civil Appeals, and filed in the court wherein said cause originated unless the same is so taken within the period of twelve months after the rendition of final judgment of the Supreme Court, or courts of civil appeals, or the overruling of a motion for rehearing. The provisions of this act shall only apply to cases which are by the Supreme Court, or courts of civil appeals, reversed and remanded, and if any cause is reversed and remanded by said Supreme Court, or courts of civil appeals, and the mandate is not taken out within twelve months as hereinbefore provided, then upon the filing in the court below of a certificate of the clerk of the Supreme Court, or courts of civil appeals, that no mandate has been taken out, the case shall be dismissed from the docket of said lower court; provided, that in any cause which has heretofore been reversed and remanded by the Supreme Court, or the courts of civil appeals, the mandate in all cases shall be taken out within twelve months from and after the passage of this act, and not thereafter.' The contention is that the statute cited applies to cases of this character and that, as the mandate was not applied for until more than twelve months after the passage of said act, the period of limitation was complete and the mandate was therefore illegally issued. The appellants waived service of the motion and filed an answer. The appellee did not apply to the clerk of this court for the certificate provided for by said article until after the mandate had been issued and had been filed in the District Court.

"Question 1. Does the said act apply to a case like this where the plaintiff in the trial court has been cast in the suit and has appealed and secured a reversal of the judgment against him, the cost of appeal being taxed against the other party?

"Question 2. If the said act applies to this case, did limitation begin to run from the date of the passage of the act or from the time it went into effect?

"Question 3. The appellee not having applied for the certificate provided for by the said act until after the mandate was issued, is she precluded thereby from having the mandate recalled?

"Question 4. Should the motion be sustained and the mandate recalled?"

1. The case stated is clearly included in the language of the act, and the courts are not at liberty to make it an exception to the rule declared, where the Legislature has made none. The broad declaration that "no mandate shall be taken out," etc., with the proviso that

the act shall apply only to cases which are reversed and remanded, is equivalent to saying that no mandate shall be issued in any cause, in which the judgment has been reversed and the cause remanded, after the expiration of the prescribed time. As, under other provisions, either party is allowed to take out the mandate, no impossible condition is imposed. Batts' Stats., arts. 1029, 1036.

2. The word "passage" is used, in connection with legislation, in several senses. The adoption of a measure by either house is spoken of as its passage through that house. The final adoption of a bill by both the house and the senate is commonly spoken of as its passage. Again, after such adoption by the Legislature, the approval of a bill by the Governor is properly called its passage. Where acts take effect from their passage, the time of approval by the Governor, or of final adoption over his veto, or of their becoming laws without his signature is, in law, called the time of their passage. But where the word is employed in an act which is finally passed at one time to take effect at a later time, it may, by reason of a somewhat common usage, be taken as referring to the latter date, unless such a construction is contrary to the intention appearing from the whole statute. The language of statutes which thus take effect at times subsequent to those of their adoption is usually taken as speaking only when they begin to operate as laws. The code of Iowa, construed in Charless v. Lamberson, 1 Iowa, 442, provided that a homestead might be sold on execution for debts contracted "prior to the passage of this law." The debt in question in that case was contracted after the passage and approval of the code, but before it went into effect. The court said: "The words 'prior to the passage' we think amount to the same thing as if the Legislature had used the word 'heretofore' and either must relate to the time of taking effect, and not to the time of passage." There were other provisions of the code more or less affecting that decision; but, in Rogers v. Vass, 6 Iowa, 405, the same court construed a statute which provided that it should not apply to those who were actual settlers on certain lands at the time of the "passage" of the act, which took effect at a date subsequent to its adoption, and the court adopted the same interpretation, saying: "This and similar expressions in statutes, has legal reference to the time of their taking effect." In Harding v. The People, 10 Colo., 393, the court in construing a statute which required a board to perform certain acts within ninety days after its "passage," in connection with a constitutional provision like ours as to the time when statutes shall take effect, used this language: "In the absence of any emergency clause, in view of this constitutional provision the expression 'after the passage of the act,' as used in the law, can have but one meaning, namely, after the act goes into effect." The same rule of construction is laid down with reference to the use of other words and phrases in many authorities. Bennett v. Bevard, 6 Iowa, 89; Davenport v. Railway Co., 16 Iowa, 348; Evansville, etc., Railway Co. v. Barbee, 74 Ind., 171; Jackman v. Inhabitants of Garland, 64 Me.,

133; Rice v. Ruddiman, 10 Mich., 135; Price v. Hopkins, 13 Mich., 318. In the case of Galveston, H. & S. A. Railway Co. v. The State, 81 Texas, 598, Justice Gaines, citing several of the cases above referred to, thus states the doctrine: "We apprehend that no universal rule of construction can be adopted when a statute which makes a distinction between future and past transactions is passed upon one day to take effect upon another, but we think the general rule is that a statute speaks from the time it becomes a law, and that what has occurred between the date of its passage and the time it took effect is deemed with respect to the statute a past transaction. This is in analogy to the rule for the construction of wills. This rule should not be applied when the language of the act shows a contrary intention." The rule we are considering is one of construction merely, and does not control the expressed intention of the Legislature; but, as we have seen, the mere use of such words as "before the passage," "after the passage," "heretofore," "hereafter," or "already" does not so plainly show an intention to fix a date differing from that of the taking effect of the statute as to control. This is especially true where there is in force a constitutional provision, such as ours, under which, with an exception not applicable here, statutes can only be effective after ninety days from the adjournment of the session of the Legislature. In some of the cases it is strongly intimated, if not decided, that such a provision as that in question, if really intended to refer to the date of the passage of the act, would be an attempt to make the law partially operative sooner than permitted by the Constitution and would bring it in conflict with the provision cited. We intimate no opinion as to this, but think it legitimate to hold that the Legislature meant that the law, when it became effective, should operate equally upon all; and that the word "passage" was intended to mean what it has so often been held to mean when used in such connections. The statute contained a clause intended to put it into operation from its passage, but the bill did not receive the vote requisite for that purpose, and hence it took effect ninety days after adjournment. It is urged that this shows that the word "passage" used in the bill referred to the time when it should have been adopted by the Legislature and approved by the Governor of otherwise perfected. But this admits that the word referred to a time when the act, in the contingency contemplated, would have gone into operation, and that therefore the Legislature, in using it, had this in mind and intended to express by the word all we hold it to mean. This would have made the law, after it took effect, operate equally upon all, fixing a limitation of one year for all cases while the law should be in operation. The opposite contention would make the statute, after it became operative, allow to some persons a full year and to others a less period. The interpretation we give to the language used effectuates the intention of the Legislature and prevents the confusion which would otherwise result from the mere fact that the bill did not pass by the vote necessary to give it immediate effect.

We do not regard the decision in Baker v. Compton, 52 Texas, 252,

as conflicting with the views which we have expressed. The question considered in that case was, when did the statute then under examination take effect? By another statute, it was provided, generally, that laws should be in force at the commencement of the sixtieth day after the adjournment of the session of the Legislature at which they were passed, "unless in the law itself another time for the commencement thereof is particularly mentioned." The act on which the decision depended prescribed a rule to govern "from and after the passage of this act." It was held that this fixed the date of the passage of the act, and the time from which it should operate. There was no difference between the time of adoption and that at which the law began to operate. In the case before us, there is no question as to the time when the statute went into effect. The Legislature could not, without the vote required by the Constitution, put it in force sooner than ninety days after adjournment, and the question is as to the proper interpretation of the language, "from and after the passage of this act," when thus used in a statute which did not go in force upon its passage. Judge Gould in his opinon distinguished the statute before him from those statutes passed subject to constitutional provisions like that of this State. Cooley's Const. Lim., 189; Supervisiors v. Keady, 34 Ill., 293; Wheeler v. Chubbock, 16 Ill., 361. The answer to the second question is that the limitation began to run from the time the law took effect.

3. The decision of the second question renders the third immaterial, and answers the fourth in the negative.