## THE STATE OF INDIANA *v.* WILLIAMS.

[No. 21,460.   Filed January 28, 1910.]

1. WORDS AND PHRASES.—*"Passage of an Act."*—The "passage of an act," ordinarily signifies that the act has received the requisite vote of both branches of congress, or the assembly, in the constitutional manner, that the presiding officer of each house has properly signed it, and that the Governor has approved it, or that it has been passed over his veto, or has become a law by mere lapse of time.   p. 416.

2. STATUTES.—*Taking Effect of.*—Acts having an emergency clause take effect upon their passage, but those containing no such clause take effect upon the distribution of the laws and the proclamation of the Governor, even though a provision is made for the taking effect thereof at and earlier date.   p. 416.

3. STATUTES.—*Repealing and Saving Clauses.—Taking Effect of.*— Repealing and saving clauses, though expressed in the present tense, take effect with the rest of the act.   p. 417.

4. STATUTES.— *"After the Passage of This Act."*— *Intoxicating Liquors.*—The phrase "after the passage of this act," as used in section nine of the act of 1908 (Acts 1908 [s. s.], p. 4), providing that if a county shall vote against the sale of liquors, then after ninety days from such election, all licenses issued "after the passage of this act" shall be null and void, provided, that no license issued prior to the "passage of this act" shall be affected thereby, is used in a technical sense, and imports the time at which such act took effect.   p. 417.

5. INTOXICATING LIQUORS.—*Licenses.—Character of Right.*—A license to retail intoxicating liquors is not a vested or property right.   p. 422.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Prosecution by The State of Indiana against Gilbert Williams.   From a judgment for defendant, the State appeals. *Affirmed.*

*James Bingham,* Attorney-General, *A. G. Cavins, Edward M. White* and *William H. Thompson,* for the State.

*Murphy & Todd* and *Condo & Browne,* for appellee.

MYERS, J.—An election was held in Wabash county on December 29, 1908, under the act of September 26, 1908

(Acts 1908 [s. s.], p. 4), at which a majority of the legal votes cast were in favor of prohibiting the sale of intoxicating liquors as a beverage in that county. Appellee, on November 3, 1908, had been granted a license for the sale of intoxicating liquors for the term of one year. The local option statute passed both houses of the legislature on September 26, 1908. The acts were published and were circulated in the several counties November 20, 1908, and the Governor's proclamation so made. Appellee was prosecuted upon an affidavit charging him with having made an unlawful sale on April 12, 1909.

The question for determination depends upon the construction of section nine of the act of 1908, *supra,* reading as follows: "If a majority of the legal votes cast at said election shall be in favor of prohibiting the sale of intoxicating liquors as a beverage in said county, then after ninety days from the date of holding said election, all licenses for the sale of intoxicating liquors granted in said county after the passage of this act shall be null and void, and the holder thereof shall be liable for any sale of liquors made by him thereafter the same as if a license had never been issued to him; if the holder of such void license shall surrender the same within ninety days from the date of holding said election, the county, town or city issuing said license shall refund to the holder an amount proportionate with the unexpired time for which the license fee shall have been paid: Provided, however, that no license issued prior to the passage of this act shall be terminated by virtue of this act or any vote thereunder."

It is not contended that the legislature had no power to annul the license, but it is claimed that section nine does not apply to appellee, for the reason that he comes within the proviso of the section as the holder of a license "issued prior to the passage," of the act, and the sole inquiry is as to the meaning of the phrase, "after the passage of this act." It is urged by the State that the phrase is synony-

mous with "enactment" of the statute, and has no reference to the time of its going into effect, and that when the act went into effect it related back to the time of the enactment, and that the language means such in its ordinary use and acceptance. On the part of appellee it is insisted that the phrase has reference to the time of its coming into force, and that an act cannot be said to be passed until it becomes effective as a law.

Two classes of cases are dealt with by this section, both having relation to the same period of time, one class not to be, and the other to be affected by the act. What

1. is that period of time? In ordinary usage, the passage of an act is well understood as that time when it is stamped with the approval of the requisite vote of both houses in the constitutional manner, signed by the presiding officer of each house, and approved by the Governor, or passed over his veto, or when it becomes a law by lapse of time. But its going into effect is an entirely different thing, as is well understood. The inquiry is, Is there anything to indicate that the phrase "after the passage of this act" has a legal or technical meaning in this statute that will take it out of the generally-accepted use and understanding of the term?

It is beyond question that a legislative enactment can only go into effect either by the declaration of an emergency in the act itself, or upon distribution of the session laws

2. to the various counties, and the proclamation of the Governor. An act without an emergency clause cannot go into effect in advance of distribution of the session laws and proclamation, even though it fixes a time for its going into effect in advance of distribution and proclamation. *Cain* v. *Goda* (1882), 84 Ind. 209; *McCalment* v. *State* (1881), 77 Ind. 250; *Noel* v. *Ewing* (1857), 9 Ind. 37; *Hendrickson* v. *Hendrickson* (1855), 7 Ind. 13; *McCool* v. *State* (1856), 7 Ind. 378; *Ex parte Lucas* (1901), 160 Mo. 218, 61 S. W. 218.

Repealing or saving clauses in an act do not take effect at a different time from the act as a whole, though expressed in the present tense. *Leyner* v. *State* (1857), 8 Ind. 490; *Schneider* v. *Hussey* (1881), 2 Idaho 8, 1 Pac. 343.

Outside this jurisdiction there is a decided conflict in the states as to the meaning of the phrase "after the passage of an act." It is held in some of the states and in the United States courts to mean the date of its enactment, authentication and approval by the Governor or President, or its passage over a veto. *Eliot* v. *Cranston* (1871), 10 R. I. 88; *Walker* v. *Mississippi, etc., R. Co.* (1875), Fed. Cas. No. 17,079; *In re Tebbetts* (1842), Fed. Cas. No. 13,817; *Johnson* v. *Fay* (1860), 16 Gray (Mass.) 144; *Wartman* v. *City of Philadelphia* (1859), 33 Pa. St. 202; *Burgess* v. *Salmon* (1878), 97 U. S. 381, 24 L. Ed. 1104; *State* v. *Mounts* (1892), 36 W. Va. 179, 14 S. E. 407, 15 L. R. A. 243; *Matter of Chardavoyne* (1887), 5 Dem. Surr. 466. The rule of the latter case is however denied in the case of *Matter of Howe* (1888), 48 Hun 235, and the opinion of the supreme court is affirmed in *Matter of Howe* (1889), 112 N. Y. 100, 19 N. E. 513, 2 L. R. A. 825. There are many cases to the point that the phrase "after the passage" of an act is a technical term, and refers to the time of its going into effect. *City of Davenport* v. *Davenport, etc., R. Co.* (1873), 37 Iowa 624; *Thompson* v. *Independent School Dist., etc.* (1897), 102 Iowa 94, 70 N. W. 1093; *Bennett* v. *Bevard* (1858), 6 Iowa 82; *Charless* v. *Lamberson* (1855), 1 Iowa 435, 63 Am. Dec. 457; *Harding* v. *People* (1887), 10 Colo. 387, 15 Pac. 727; *State, ex rel.,* v. *Bemis* (1895), 45 Neb. 724, 64 N. W. 348; *Walker* v. *State* (1895), 46 Neb. 25, 64 N. W. 357; *Schneider* v. *Hussey, supra; Jackman* v. *Inhabitants, etc.* (1875), 64 Me. 133; *Patrick* v. *Perryman* (1893), 52 Ill. App. 514; *Ex parte Lucas, supra; Andrews* v. *St. Louis, etc., R. Co.* (1884), 16 Mo. App. 299;

*Hill* v. *State* (1880), 73 Tenn. 725; *Logan* v. *State* (1872), 59 Tenn. 442; *In re Alexander* (1907), 53 Fla. 647, 44 South. 175; *Shook* v. *Laufer* (1907), (Tex. Civ. App.), 100 S. W. 1042; *Scales* v. *Marshall* (1902), 96 Tex. 140, 70 S. W. 945; *Galveston, etc., R. Co.* v. *State* (1891), 81 Tex. 572, 17 S. W. 67. In the case of *Mills* v. *State Board, etc.* (1904), 135 Mich. 525, 98 N. W. 19, the court, referring to four or five of the cases here cited, uses this language: "In each of these cases, except *Patrick* v. *Perryman* [1893], 52 Ill. App. 514, the effect of holding that the language 'at the time of the passage of this act' referred to the date the act was approved made the law take effect at an earlier time than under the Constitution it could. There was presented to the court in each of these cases, therefore, the alternative of declaring that this language meant when the law took effect or that it meant nothing, and the court was therefore compelled to decide that it meant when the law took effect." An examination of those cases fails to convey to our minds the inference drawn by the supreme court of Michigan as to all of them, though it does as to some, but they followed the case of *Patrick* v. *Perryman, supra.*

This act undertakes to fix a time prior to which licenses issued theretofore shall not be affected and subsequent to which licenses issued thereafter shall be so affected. As the right to acquire license was not denied by the act, but recognized, with the contingent liability of annulment, by reason of the vote, it must follow that this right was intended to be unaffected, irrespective of the question whether the contingency of the ninety-day period should relate in time to the enactment by the two houses and the approval by the Governor, or to the date of the going into effect of the act up to the time of an election. That is, that an applicant might acquire license, even after the act went into effect, subject to its being annulled by the vote, and except by an annulling vote, it would be immaterial when the license was issued. With the general license statute otherwise un-

affected, it was doubtless contemplated that there might be counties in which there never would be a vote adverse to licensing, or that it might be at some remote time, and that the right to apply for and obtain license should continue up to the holding of an adverse election. After such election, the privilege can be no further extended, and prior to such election, but subsequent to the going into effect of the act, and up to the time of the election, there is a modified right. The contention of the State, that upon the going into effect of the act it relates back to the time of the enactment, and fixes that as of the date of passage, we think untenable. It could not of course relate back so as to make that an offense which was not an offense until the act went into force.

In the case of *Tarlton* v. *Peggs* (1862), 18 Ind. 24, it was held that an act was passed on the date of its filing in the office of the Secretary of State, where the session had adjourned with the bill in the hands of the Governor, who had returned it without objection, but that case turns on the constitutional provision that ''it shall be a law, without his signature.'' In the case of *Cain* v. *Goda, supra,* it was held that one act passed without an emergency clause could not be put into force by a so-called supplemental act putting the first act in force ''from and after its passage.'' There it is manifest that the legislature treated the ''passage of the act'' as the time when the act had received the signatures of the presiding officers of the two houses and the Governor.

Certainly section nine was not intended to go into effect at a different time from the remainder of the act for any purpose, and the phrase ''after the passage of this act'' only becomes important when taken in connection with an election, which is a wholly indefinite period, but which could not be held until the act went into force. And while there is no question as to when the act went into effect, the different sections and portions of the same are so related that it seems a fair construction to conclude that, taking the whole

together, the phrase was used in a technical sense. The only purpose which could have been in the legislative mind in giving the phrase its ordinary meaning was not to prevent the issuing of a license, but to curtail the time the license should run; but that depends upon an election, a wholly indefinite event, and the purpose of the act as a whole was to leave the general license laws in force and operative, and the construction insisted upon by the State would, in effect, make the law effective for some purposes or in part, and not in effect as to others, and it seems to us that the intention was that the whole act should become effective at one and the same time. If the phrase was intended as a deterrent, the going into effect of the act would have the same effect, and it is reasonable to suppose that the legislature had in mind that it would be in force in a very short time in any event, and the construction that the phrase was intended to operate as a deterrent is hardly probable. The provision for a rebate of the license is of some significance as indicating that it was not intended as a deterrent, for such provision, if not in the nature of an invitation to pursue the ordinary practice, certainly shows no intention to deal harshly with those engaged in the business. It is sought to put all upon as near an equality, as between the municipalities and those engaged in the business, as the nature of the case will permit, and to fix one period of time applicable alike to all persons; and the operation of the act in all its effects is prospective, reckoning from the date it went into effect.

By reference to the Senate Journal of the Special Session 1908, pp. 40, 62, it will be discovered that as originally drawn section nine did not contain the phrase "after the passage of this act," or the proviso at the close of the section, or the provision for license running ninety days, but for thirty days only, and rendered void all licenses issued prior to an adverse election, at the expiration of thirty days from the election, and used the word "theretofore" before

the word "granted" in line 5 of the section, referring to the date of the election, and the time for obtaining a rebate was forty days. If the act had passed as originally introduced, at the expiration of thirty days from an election, all licenses granted prior to the election would have been annulled, and of course the election could not be held until the act went into force, and after not less than twenty, nor more than thirty days from the order for an election, and after ten days' notice was given. What could have been the object of the change? It might be argued that it was to fix an early day from which to reckon, to curtail the number of saloons, by so many as might obtain license after the approval of the act; but if that were so why extend the period to ninety days, and why omit an emergency clause. The act as originally introduced would have treated all alike, while the contention of the State would treat different persons similarly situated differently, without any apparent reason for so doing. The fact that the phrase "after the passage of this act" was inserted by amendment, indicates a purpose, and if used literally it not only made a distinction between persons, but it would have a retroactive effect on some, and not on others, and instead of extending grace and equality would fix a date of reckoning by which to cut down grace to some and extend it to others, when the conditions are the same; so that while the question of grace was wholly with the legislature, it will not be presumed that it was intended to be extended without any element of equality. The amendments made in the senate extended the privilege ninety days from an election, and rendered the operation of the act, in that respect at least, prospective. It is a fair inference that the entire act was intended to operate prospectively from its going into effect. Whether the time intended by the phrase "after the passage of this act" refers to the date of its approval or the date of its going into effect, the discrimination between persons is the same— those having licenses issued before are not affected, those

having licenses issued after are limited. There is this differ-
ence, however, that until the act took effect no one was bound
to take notice thereof, and all persons up to the time of
holding the election had the same rights, supposing them to
be otherwise qualified, to acquire license; but the effect of
the construction insisted upon by the State would be to
make one class liable to punishment after the expiration of
ninety days from the election for an act which became
criminal by virtue of the fact that such persons did not have
license when the act was approved, though they may have
had when it went into effect, while the other class would
not be punishable, by reason of having a license both when
the act was approved and when it went into effect. In
the former case the act would be in a sense retroactive and
*ex post facto,* in that it would create a liability to punish-
ment by reason of its fixing a status or a period of time,
by a statute which was not in force, from which to reckon
guilt or innocence, depending upon the result of an election.
The result would necessarily be that the act would become
effective for some purposes before the time when by the
organic law it could take effect.

We do not mean to be understood as holding or intimat-
ing that the legislature had not the power in this character
of legislation to fix the date of the approval of the
act or any other definite time as the time from which
to reckon in discriminating between persons, or to
fix their status, for it does not affect a vested or property
right, and is a matter purely for legislative grace, which
may be extended or denied. But in the absence of the
statute's fixing definitely the date when the reckoning
shall begin, even though it be a matter of grace, it should
not be left open to construction or implication, and espe-
cially when involving even indirectly the element of punish-
ment. So that the act may well be regarded as one which
should receive a liberal construction, and the history of the

legislation is to some extent impressed with that element of legislative intention. To hold that one who had a license before the approval of the act should be put in a different situation from one who acquired license in the interim between the approval of the act and its going into effect, so that one would be affected by the election, which, after all, is the pivotal question in the statute, and the other would not be, would be to impress the statute with some measure of unreason, which should not be done if it can be avoided. 26 Am. and Eng. Ency. Law (2d ed.), 646, and note.

The failure to attach an emergency clause indicates a lack of necessity in the legislative mind for the immediate operation of the act, and rationally leads to the conclusion that grace was intended to be extended to give time to those who might be affected to adjust themselves to the new state of things if an election adverse to licensing should be held, and that up to the time of the act's going into effect all should be put on an equality. The liberality of the legislation seems fairly to call for liberality of construction. The facts that there is no emergency clause, and that there is no adjudicated definition of the phrase in this State, but a very largely preponderating number of the states have declared its meaning as technical, tend to enforce the proposition that it was so used in this act, and that is our judgment.

The court below did not err, and the judgment is affirmed.

Monks, J., absent.