ARTHUR R. LOHM *v.* STATE OF INDIANA

[No. 3-378A73. Filed September 13, 1978. Rehearing denied October 26, 1978. Transfer denied January 10, 1979.]

*P. Stephen Miller, Byron F. Novitsky Law Office*, of Fort Wayne, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Robert J. Black*, Deputy Attorney General, for appellee.

HOFFMAN, J. — This is an interlocutory appeal in which defendant-appellant Arthur R. Lohm contends that the offenses of incest, as defined by IC 1971, 35-1-82-1 (Burns Code Ed.), and sodomy, as defined by IC 1971, 35-1-89-1 (Burns Code Ed.), were repealed on July 1, 1977 by the provisions of the new criminal code[1] and that, therefore, the trial court erred in denying his motion to dismiss the information charging him with having committed those offenses on September 30, 1977.

After the trial court denied the motion to dismiss, appellant filed a Petition to Certify Judgment to the Indiana Court of Appeals and a motion to stay the proceedings pending the ruling of this Court on such appeal. *See:* Ind. Rules of Procedure, AP. Rule 4(B)(5). Both motions were granted by the trial court on March 20, 1978. Appellant then filed his petition in this Court on March 22, 1978, urging this Court to accept jurisdiction of the interlocutory order. On May 1, 1978, such petition was denied. However, on rehearing this Court granted appellant's petition.

The statutes under which appellant was charged provide as follows:

"35-1-82-1 [10-4206]. Incest — If any stepfather shall have sexual intercourse with his stepdaughter, knowing her to be such, or if any stepmother and her stepson shall have sexual intercourse together, having knowledge of their relationship, or if any parent shall have sexual intercourse with his or her child, knowing him or her to be such, or if any grandparent shall have sexual intercourse with his or her grandchild, knowing him or her to be such, or if any brother shall have sexual intercourse with his sister, he being over the age of sixteen [16] years, and having knowledge of his relationship, or if any uncle or aunt shall have sexual intercourse with his or her niece, or nephew, having knowledge of his or her relationship, or if any nephew or niece shall have sexual intercourse with his or her aunt or uncle, such nephew or niece being over the age of sixteen [16] years and having knowledge of his or her rela-

1. Acts 1976, P.L. 148, § 24, at 815-816.

tionship, he or she shall be guilty of incest and, on conviction, shall be imprisoned in the state prison not less than two [2] years nor more than twenty-one [21] years, or may be imprisoned in the county jail not less than six [6] months nor more than one year. [Acts 1905, ch. 169, § 456, p. 584; 1907, ch. 74, § 1, p. 101.]

"35-1-89-1 [10-4221]. Sodomy. — Whoever commits the abominable and detestable crime against nature with mankind or beast; or whoever entices, allures, instigates or aids any person under the age of eighteen [18] years to commit masturbation or self-pollution, shall be deemed guilty of sodomy, and, on conviction, shall be fined not less than one hundred dollars [$100] nor more than one thousand dollars [$1,000], to which may be added imprisonment in the state prison not less than two [2] years nor more than fourteen [14] years. [Acts 1905, ch. 169, § 473, p. 584; 1973, P.L. 320, § 3, p. 1732.]"

Acts 1976, P.L. 148, § 24, at 815-816 (hereinafter referred to as P.L. 148), repealed IC 1971, 35-1-82-1, supra, and IC 1971, 35-1-89-1, supra. The act was duly published and circulated in the counties on June 2, 1976. However, Section 28 of P.L. 148 postponed the effective date of the act until July 1, 1977.

Prior to July 1, 1977, the 1977 session of the General Assembly passed Acts 1977, P.L. 340 (hereafter referred to as P.L. 340). This act contained certain amendments to P.L. 148. Section 148 of P.L. 340 repealed, *inter alia*, Acts 1976, P.L. 148, §§ 25, 27. P.L. 340 then enacted a new savings clause, as follows:

"SECTION 150.  (a) Neither this act nor Acts 1976, P.L. 148 affects:

(1)   rights or liabilities accrued;

(2)   penalties incurred; or

(3)   proceedings begun;

before October 1, 1977. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced as if this act and Acts 1976, P.L. 148 had not been enacted.

(b)   An offense committed before October 1, 1977, under a law repealed by Acts 1976, P.L. 148 shall be prosecuted and remains punishable under the repealed law.

(c)   Notwithstanding subsections (a) and (b) of this SECTION, a

defense available under IC 35-41-3 is available to any defendant tried or retried after September 30, 1977."

Acts 1977, P.L. 340, § 151 amended Acts 1976, P.L. 148, § 28, by changing its effective date from July 1, 1977 to October 1, 1977. Section 152 of P.L. 340 contained an emergency clause and provided that Sections 151 and 152 of P.L. 340 were to take effect on July 1, 1977. The 1977 Acts were published and circulated in the several counties on August 29, 1977.

Article 4, § 28 of the Indiana Constitution provides as follows:

"No act shall take effect, until the same shall have been published and circulated in the several counties of this State, by authority, except in case of emergency; which emergency shall be declared in the preamble, or in the body, of the law."

But for this provision of our Constitution, legislation would be valid and binding immediately upon its passage and approval by the Governor, its passage over the Governor's veto, or its passage and the refusal of the Governor to sign or veto such bill within the time allowed. *Sudbury v. Board, etc.* (1901), 157 Ind. 446, 62 N.E. 45.

*See:* Ind. Const. art. 5, § 14;

> *State, ex rel., v. Grant Superior Court* (1930), 202 Ind. 197, 172 N.E. 897, 71 A.L.R. 1354;

> *State v. Williams* (1910), 173 Ind. 414, 90 N.E. 754.

In *Jones v. Cavins* (1853), 4 Ind. 305, our Supreme Court discussed this provision of the Indiana Constitution and its relationship to the common law and our former constitution. There it was stated at 311-312 of 4 Ind.:

"By the common law, a statute took effect at once throughout the jurisdiction to be governed by it. So it did under our former constitution, where there was no express legislative direction on the subject. In England, a statute took effect from the first day of the session of parliament enacting it. In this state, under the former constitution, from the time it was 'published in print, by authority, at any place within the state.' *Tredway v. Gapin,* 1 Blackf. 299. It had, however, before the framing of the new constitution, become a common practice for the legislature to provide that laws should

take effect in each county when filed therein, thus producing, for a considerable length of time, an entire want of uniformity in the laws in force.

"In this state of things, the constitutional convention framed the provision we have quoted, declaring that no law should take effect till it was 'published' and 'circulated' (two words, as here used, meaning the same thing) 'in the several counties of this state;' and we think the intention was to arrest the piecemeal mode in which laws had, for a time, been brought into operation, and to make their taking effect a single entire thing throughout the state. It seems to us that the language of the constitution will fairly admit of no other construction. It speaks of no partial taking effect of a law, no coming into force in the different or several counties, but it speaks of its taking effect as a single event, after distribution in the several counties. The term, 'several counties,' is used in connection with the distribution, not the taking effect of the laws. . . . It says that no law shall take effect, any effect, anywhere, till a certain condition precedent has been performed, *viz*, till it has been distributed in, not one or more, but the several counties of the state. Now, the several counties of the state are all the counties of the state."

A legislative enactment, therefore, can only go into effect either by the declaration of an emergency in the act itself, or upon distribution of the session laws to the various counties, and the proclamation of the Governor. *State v. Williams, supra. See*:  IC 1971, 1-1-3-1 *et seq.*

The general rule under our Constitution is that of publication in the several counties of the state. The declaration of an emergency within an act is the exception. However, even the general rule of publication takes on two distinct aspects with regard to the effective date of legislation. Absent an emergency clause or any provision concerning its effective date, a statute takes effect from the date of the last filing in the several counties as shown by the proclamation of the Governor. Ind. Const. art. 4, § 28, *supra.*

IC 1971, 1-1-3-1, *supra;*

IC 1971, 1-1-3-2, *supra;*

*See generally, State, ex rel., v. Indiana Board of Pharmacy* (1900), 155 Ind. 414, 58 N.E. 531.

However, the statute itself may fix the time when it takes effect, *State, ex rel., v. Berghoff* (1902), 158 Ind. 349, 63 N.E. 717; *State, ex rel., v. Indiana Board of Pharmacy, supra*; so long as that time is later than the date of the last filing of the acts in the several counties.

*See: State v. Williams, supra;*

*Hendrickson v. Hendrickson and Others* (1855), 7 Ind. 13.

The purpose of requiring publication is to give notice to the people of the state before exacting obedience to the new laws by suspending the operation thereof until they can be printed and deposited in places accessible to the citizens of the several counties.

*Sudbury v. Board, etc., supra;*

2 Sutherland Statutory Construction, § 33.07, at 11-12 (1973).

On the other hand, our Constitution empowers the Legislature to make a statute take effect immediately upon its passage if there is an emergency need for it to do so. If the emergency is declared in the statute, it becomes law without the necessity of publication and circulation in the several counties. *State, ex rel., v. Grant Superior Court, supra.* The Constitution expressly requires the declaration of an emergency to be stated in the preamble or body of the law itself.

Relying on *Cain et al. v. Goda* (1882), 84 Ind. 209, appellant contends that since an emergency can only effectuate the law in which it is declared, P.L. 340 could not change the effective date as declared in P.L. 148. In *Cain*, an act approved April 8, 1881, containing no emergency clause, defined and fixed the term of the thirty-first judicial circuit of Indiana. On April 15, 1881, a supplemental act was passed containing an emergency clause and declaring the April 8th act effective on the approval of the April 15th act. Our Supreme Court stated that an act which contains no emergency clause cannot be put into effect by a subsequent statute declaring that it shall go into force from and after its passage. The Court further stated that the Constitution requires the emergency to be declared in the preamble or body of the act itself, and that it cannot be incorporated, with effect, in any other statute.

Appellant argues that the 1977 amendment was the same as enacting an independent statute which would have read, "Because an

emergency exists P.L. 148 shall become effective on October 1, 1977." This, appellant concludes, is a clear violation of Art. 4, § 28 of the Indiana Constitution since the emergency was not declared within the preamble or body of P.L. 148.

P.L. 148, as approved on February 25, 1976, contained no emergency clause which would allow it to go into effect in advance of distribution to the several counties and the proclamation of the Governor. The 1976 Acts were published on June 2, 1976. However, Section 28 of P.L. 148 postponed the time when the act would take effect until July 1, 1977.

The 1977 session of the General Assembly enacted P.L. 340. This act resulted in a thorough revision of the entire criminal code. *See:* Kerr, *Foreword: Indiana's New and Revised Criminal Code, Survey of Recent Developments in Indiana Law*, 11 Ind. L. Rev. 1 (1978). Section 151 of P.L. 340 amended Section 28 of P.L. 148, so that the effective date of the act, as amended, was delayed from July 1, 1977 to October 1, 1977. Section 152 of P.L. 340 declared an emergency to exist so that the foregoing amendment would take effect on July 1, 1977.

Contrary to appellant's contention, the emergency clause of P.L. 340 was not the equivalent of placing an emergency clause in P.L. 148. Article 4, § 28 of the Indiana Constitution provides that "No act shall take effect, until .... published ... except in case of emergency." As pointed out by appellant, an emergency clause is used to effectuate an act before its publication. The emergency clause of P.L. 340 did not effectuate P.L. 148 before its publication. Rather such emergency clause was used to effectuate the provisions of P.L. 340 itself. It did not accelerate the time for the taking effect of P.L. 148, but rather postponed the effective date so that the public could become informed of the provisions of P.L. 148 as amended by P.L. 340. Consequently, the emergency clause of P.L. 340 did not violate Art. 4, § 28 of the Indiana Constitution.

Appellant next contends that charging appellant with the offenses of incest and sodomy under the provisions of the old criminal law constituted a violation of the equal protection of the laws. Appellant contends that the following classifications were created by the conduct of the Legislature:

"1. Those citizens who were clearly aware prior to July 1, 1977

of the prohibition of Incest and Sodomy as defined by the old criminal code.

"2. Those after July 1, 1977 who did not have access to the crime as defined because they were not published and who were in fact informed that such acts as defined were repealed."

However, such classification by appellant does not create a classification for equal protection purposes. With regard to the first class, it cannot be disputed that before July 1, 1977, the entire citizenry of Indiana is deemed to have notice of the prohibition of the offenses of incest and sodomy under the old criminal code. With respect to the second class, a person is required to comply with the law from the time of its passage even though he does not know of its existence. Consequently, all the people of the state were required to comply with the provisions of the old criminal law until October 1, 1977.

Accordingly, the trial court did not err in denying appellant's motion to dismiss. The cause is therefore remanded to the trial court for further proceedings consistent with the opinion.

Garrard, P.J. and Staton, J. concur.

NOTE—Reported at 380 N.E.2d 561.