A transfer inheritance tax of $75,816.29 was assessed by the commissioner (under P.L. 1909, ch. 228, as amended P.L. 1922,ch. 174), in respect of a legacy given by the will of Elizabeth Rodman Voorhees, deceased, to the New Jersey College for Women at New Brunswick. Petitioners contend that the transfer by the legacy in question is exempt from taxation by virtue of the amending statute, P.L. 1925, ch. 102, which provides:
"1. In addition to the property now exempt from taxation under the act to which this is a supplement, there shall be exempted property passing by devise or bequest since the first day of July, one thousand nine hundred and twenty-four, to or for the use of any institution solely educational for whose benefit there may have been or may hereafter be appropriations made by the legislature of this state.
"2. This act shall take effect immediately. Approved March 13th. 1925."
It is admitted that Women's College, a subordinate branch of Rutgers University, comes within the class of transferees purporting to be exempted by this act. It is also admitted that Elizabeth R. Voorhees died on September 21st, 1924, and that the testamentary transfer in question therefore comes within the class of transfers expressly specified by the statute.
The sole question on this appeal is as to whether or not this exempting statute, in so far as it is intended to, and does, affect transfers which occurred prior to its enactment, is constitutional. More specifically the issue is narrowed by the briefs of the parties to a determination as to whether or not the statute, to the extent of such expressed retroactive operation is in violation of article I, paragraph 20, of the constitution of this state in that it operates to donate moneys of the state to a private corporation. If the statute be unconstitutional in this respect, the tax must be affirmed; otherwise it must be set asidein toto.
(The commissioner further contends that the statute is unconstitutional as being a private or special law; but concedes *Page 144 
that this court on this appeal is bound, by prior adjudications, not hitherto reversed or overruled, to determine such contentions adversely to the respondent.)
The statute in question was before this court in the cases ofAgnew v. Bugbee, 114 N.J. Eq. 324, 116 Atl. Rep. 422, andBugbee v. Mills, 116 N.J. Eq. 59, 172 Atl. Rep. 203; but in neither of these cases was the present question in issue nor considered.
The supreme court has held that "the constitutional limitations which prevent the legislature from impairing the obligation of a contract do not debar it from annulling obligations due to the public;" and this determination was in a case where it was expressly assumed as proven that the right of the state to the financial obligation annulled by the legislative enactment had already previously become "vested." Cortelyou v. Anderson,73 N.J. Law 427, at 431, 63 Atl. Rep. 1095, (reversed on other grounds, Anderson v. Cortelyou, 75 N.J. Law 532,66 Atl. Rep. 1072); Township of North Wildwood v. Public Utility Comm'rs,88 N.J. Law 81, 95 Atl. Rep. 749, and cases cited.
It must therefore be deemed as settled, so far as this court in this case is concerned, that the statute here in question is not unconstitutional simply because it annuls a vested right of the state. Neither is a retroactive statute unconstitutional merely as such.
The contention of the tax commissioner, however, is that the effect of the statute, so far as concerns the intention and result of its retroactive provision, is the gift to the Women's College of a sum of money equal to the amount of the tax as to which the latter's liability and obligation had already theretofore become fixed; and that as such gift it contravenes article I, section 20, of the state constitution.
The constitutional provision referred to reads as follows:
"No donation of land or appropriation of money shall be made by the state * * * to or for the use of any society, association or corporation whatever."
The commissioner's argument is that at and on the death of Elizabeth Voorhees on September 21st, 1924, there immediately *Page 145 
accrued to the state a vested right to the tax which was subsequently computed and assessed, and a lien for the same on all property owned by decedent at her death.
There can be no doubt that this is so. Under the provisions of the taxing statute, the right of the state vests at the instant of death; the tax is due and payable at that moment; the value of the decedent's property at that moment (unaffected by subsequent changes in value) is that upon which the tax is computed. The fact that the actual computation and assessment of the tax is not, and cannot be, completed at that instant, nor that the statute does not impose a penalty of interest for delay in payment of the tax until a year from the date of death, — neither of these affects the immediately vested right of the state to the tax.
The right to such tax having vested on September 21st, 1924, obviously the operation and effect of the statute of 1925, if it be valid and operative in that behalf, is to take away from the state its vested right to that tax and relieve the decedent's beneficiary from its "vested" liability and obligation to the payment thereof. It is certainly a reasonable argument that in substance and effect this is a giving by the state to that beneficiary of a sum of money in the amount of that tax; and it is concluded that in fact such is the operation and effect of the retroactive provision of this statute.
Does the making of that gift contravene the constitutional provision relied upon by the commissioner?
In Trustees of Rutgers College v. Morgan, 70 N.J. Law 460,57 Atl. Rep. 250, the supreme court declared it was competent for the legislature to establish an agricultural college at Rutgers and to support it out of the state's general fund. The court specifically held that legislation on that subject is not infirm by reason of the constitutional provision against private, special or local legislation, or by reason of the further provisions of section 20, article I.
In the words of the court:
"This provision, as well as that relating to special laws, does not bar instrumentalities for public education provided *Page 146 
by the state and under its control by general laws where the appropriation is made for such schools. They were designated as an insurmountable barrier to giving free state aid, and to donations to private or sectarian schools, and should be rigidly enforced; but they were not intended to narrow or circumscribe the legislative power to furnish facilities by general laws for public education under its own supervision."
This determination was quite clearly approved by the court of errors and appeals in Morris and Essex Railroad Co. v. Mayor,c., of Newark, 76 N.J. Law 555, at 560, 70 Atl. Rep. 194.
It is to be observed, however, that these determinations go no further than to hold that grants or appropriations made by the legislature to corporations in consideration of services rendered or to be rendered to or for the state, or even in consideration of a moral obligation to reimburse corporations for services rendered or materials supplied to or for the benefit of the public, do not contravene the constitutional provision subjudice. They do not hold that a legislative grant or appropriation may be made, purely as a gift, to any corporation whatever (whether charitable, educational or of any other nature) without violating that provision.
In Strock v. Mayor, c., of East Orange, 77 N.J. Law 382,72 Atl. Rep. 34, it was held by the supreme court that a statute authorizing the granting of the use of municipal playgrounds was in violation of section 20 as well as section 19 of article I of the constitution, in that it amounted to a gift of public property to private persons or corporations. It will be observed that the legislative grant here held void was not an appropriation of money technically as such.
The same court, in Mayor, c., of Jersey City v. NorthJersey Street Railway Co., 78 N.J. Law 72, 73 Atl. Rep. 609,
expressed itself in positive terms, (p. 74), to the effect that since the adoption of sections 19, 20, article I, of the constitution, it has been legally impossible for the legislature to authorize the giving, or itself to give, public aid to private corporations; and that there is no distinction between direct pecuniary aid and indirect aid by release from a pecuniary *Page 147 
burden; and that there is no distinction between a release of an obligation for license fees and a release of an obligation for taxes.
Even in Trustees of Rutgers College v. Morgan, supra, the court says that this constitutional prohibition was designed to prevent giving "free state aid and donations to private * * * schools," — and "should be rigidly enforced." And in Trustees ofNewark Free Public Library v. Civil Service Commission,83 N.J. Law 196, 83 Atl. Rep. 980; aff'd. 86 N.J. Law 307,90 Atl. Rep. 261, the constitutional validity of the appropriation of public moneys by municipalities to free public libraries, is rested on the ground that the libraries in question were public agencies for public education and the appropriations are expenditures by the state or municipality for such public education through
such agents.
It is concluded, therefore, that there is no soundness to the contention of appellant that the constitutional prohibition is only against a legislative "appropriation" of money, technically as such. A gift of public funds or property to a private corporation is unconstitutional whether made directly or indirectly; and the annulling by the legislature of a financial obligation due from such corporation to the state, the right to which has theretofore already become fixed and vested in the state, is (unless supported by some legal, equitable or moral consideration therefor) such a gift, and hence invalid.
Obviously those cases cited by appellant as proof that it is established law that a retroactive statute is not unconstitutional unless it be ex post facto or impair contractual obligation or deprive a party of an existing remedy for enforcing a contract, are in nowise controlling nor even pertinent, inasmuch as the cited cases were determined prior to 1875, and it was not until 1875 that the provisions here under consideration were incorporated into our constitution.
It is equally obvious that the citation by appellant of the statutes passed in 1933 and 1934, purporting to annul, or authorize the annulment of, prior fixed and existing tax obligations, is a mere begging of the question. There is no citation *Page 148 
of any adjudication that such statutory enactments are valid. Presumably, in so far as such enactments are analagous to that which is here sub judice, their validity will stand or fall upon the same considerations which control the instant case.
Assuming, but without deciding, that the constitutional prohibition is not intended to apply in the case of grants to public corporations, it is at least tacitly conceded that the appellant beneficiary in this case is a private corporation; and doubtless judicial notice may be taken of the fact that it is not a public corporation.
The only remaining factor, pertinent or material to the present inquiry, is the nature of the grant of public funds or property effectuated by the retrospective operation of this statute. The burden of proof is on the appellant to establish that the commissioner's determination is erroneous. The constitutional provision is general and all-comprehensive. It rested upon the appellant to establish before the commissioner, and it rests upon it to establish here, that the legislature grant thus effectuated was made upon due legal, equitable or moral consideration and therefore does not come within the scope of the constitutional prohibition. This has not been done; the record is barren of any evidence thereof.
On the contrary it is clear, upon consideration of the record and established principles, that the instant case does not come within any such exception. The transfer inheritance tax return in this estate was not filed with the commissioner until December, 1927, and the computation and assessment of the tax was of course not made until a still later date. Obviously the legislature did not have, — (could not have had), — when it adopted the 1925 statute in March, 1925, knowledge of the amount of tax for which this estate was liable, — knowledge of the amount which would be indirectly appropriated to this beneficiary by the retrospective action of the statute. Consequently the legislature did not form any judgment, — because without that knowledge it could not
form any judgment, — as to whether a fair consideration, legal or moral, had been received for the grant which would be indirectly effectuated. *Page 149 
Moreover, the statute is general in its terms. It is not limited in its operation to this one particular testamentary beneficiary. (If it had been so limited, it would doubtless be unconstitutional as special legislation.) It would be patently absurd for this court to assume or be asked to believe that the legislature knew in March, 1925, what persons had become liable to transfer inheritance tax since July 1st, 1924, and in how many instances such tax liabilities rested upon "institutions solely educational, c.," and the amounts of such several tax liabilities by such institutions. It is evident, therefore, that the legislature did not, because it could not, include this retroactive provision in the statute with any idea, intent or purpose that it was thereby making fair and reasonable compensaion, to the beneficiaries who might thereby be affected, in consideration of and return for services performed or materials supplied under circumstances which imposed upon the state some legal or moral obligation.
Clearly it is not a probable nor a natural inference, from the fact that the legislature had theretofore repeatedly made direct appropriations to the College for Women and to Rutgers University (of which the first-mentioned institution forms a part), that it intended the indirect grant effectuated by the retrospective operation of this statute, utterly irrespective of whatever it might amount to, as a compensation for a legal or moral obligation. On the contrary it appears that in 1924 and in 1925 specific appropriations of large amounts were made to the College for Women, — respectively $205,000 and $467,378.67, (and of much larger additional amounts to Rutgers University). The natural inference would be that the legislature had by those appropriations intended to discharge, and had discharged, all its legal and moral obligations to that institution existing during that period; hence that the indirect grant under consideration was not intended as and for any such compensation.
In Agnew v. Bugbee, supra, it was held that the 1925 statute was valid in so far as it operated to exempt these institutions from this tax with respect to testamentary transfers occurring subsequent to the passage of that amendment; *Page 150 
and it was said that it would be inconsistent for the state to give with one hand and take away (by taxation) with the other. The situation in the instant case is quite different. It is not a question of exempting from future taxation, but of making a constitutionally unlawful gift; — of making a lawful gift with one hand and an additional unlawful gift, under cover, with the other.
It is concluded that the statute of 1925 is unconstitutional and invalid to the extent that it provides for exemption or annulment of taxes to which the right of the state had already become fixed and vested; that the liability of the present estate for the tax herein appealed is not annulled or affected by that statute; and that the tax aforesaid should be affirmed, with costs. *Page 151