W. Carloss MORRIS, Jr., Independent Executor of the Estate of Morris C. Oldham, Deceased, et al., Appellants,

v.

Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellees.

No. 10708.

Court of Civil Appeals of Texas.

Austin.

Nov. 18, 1959.

Rehearing Denied Dec. 2, 1959.

**118**

Morris, Termini, Harris, McCanne & Lacas, Houston, for appellants.

Will Wilson, Atty. Gen., Marietta McGregor Payne, Asst. Atty. Gen., for appellees.

ARCHER, Chief Justice.

This suit was instituted by appellants, W. Carloss Morris, Jr., as Independent Executor of the Estate of Morris C. Oldham, deceased, and Oldham Little Church Foundation, acting by and through its duly constituted trustees, against appellees, Robert S. Calvert, Comptroller of Public Accounts, Jesse James, Treasurer of the State of Texas, and Will Wilson, Attorney General of the State of Texas, pursuant to the provisions of Article 7057b, Rev.Civ.Stat. of Texas 1925, Vernon's Ann.Civ.St. art. 7057b, for a refund of inheritance taxes paid by appellants under protest on the value of property devised and bequeathed to Oldham Little Church Foundation by the will of Morris C. Oldham, deceased. Oldham Little Church Foundation is, as it was at all times material to this cause, a charitable organization in the form of a trust, and appellants contend that under the facts of this case the entire value of such devise and bequest is exempt from inheritance taxes under the law. Upon a trial before the court, without a jury, judgment was rendered for defendants.

The appeal is founded on four points of error, as follows:

"1. The error of the court in holding that Article 7122, Rev.Civ.Stat. of Texas, 1925, as amended by Acts 1955, 54th Leg., p. 1032, ch. 389, Sec. 1, does not apply in this case, and therefore, the devise and bequest in question is not exempt from tax under its provisions, for the reason that Morris C. Oldham died before the effective date of such amendatory act.

"2. The error of the court in holding that Art. 7122–a, V.A.C.S. is inef-

fective to render said amendatory act of 1955 applicable to the devise and bequest in question.

"3. The error of the court in holding under the facts of this case that the question of inheritance tax on the devise and bequest in question is controlled and governed by the provisions of Art. 7122, Rev.Civ.Stat. of Texas, as amended by Acts 1933, 43rd Leg., p. 581, ch. 192, Sec. 2b(20), and as existing prior to the effective date of the amendatory act of 1955.

"4. If the court was not in error in the holding stated in the third point of error, then appellants urge and insist that the court was in error in holding that the devise and bequest in question was not exempt from inheritance tax under the provisions of the statute which the court held to be applicable and controlling in this case."

The facts are not in dispute. Morris C. Oldham died testate on July 19, 1955, and his will was admitted to probate, by its terms $807,842.27 as appraised, was devised to Oldham Little Church Foundation, which at all times material was and is a charitable organization created by a Trust Indenture filed in the Records of Harris County, Texas, in 1949, the recited purpose of the Foundation is to aid small Protestant Churches that are nonprofit organizations organized for the purpose of spreading Christianity.

The executor timely filed the required affidavit for inheritance tax appraisement in respect to the estate, in which a statutory exemption from inheritance tax was claimed on the entire value of the property passing to the Foundation under the will.

The trustees prior to and on June 18, 1957, made the following resolution:

"Be it Resolved that the Trustees of Oldham Little Church Foundation irrevocably covenant and agree and bind the Oldham Little Church Foundation to use any and all assets and properties received or to be received under the Will of Morris C. Oldham, together with all income and revenues from such properties, solely within the State of Texas, but this resolution, covenant and agreement shall terminate, cease to exist, and be no longer of any force and effect if it should be determined that a State of Texas inheritance tax has to be paid by the Estate of Morris C. Oldham or the Foundation or anyone else on such property or any part thereof received or to be received by the Foundation under the Will of Morris C. Oldham."

This was an effort on the part of the trustees to make a compliance with the statute. It is to be noted however that the resolution's effectiveness was conditioned on a favorable tax construction, failing in which the resolution was to terminate and cease to exist.

It was stipulated that the devise is to be used and will be used exclusively within the State of Texas, if such use will exempt the same from the tax.

On March 21, 1957 the Comptroller sent appellants a notice of assessment that an inheritance tax in the amount of $102,551.34 was fixed on the value of the property passing to the Foundation.

On June 19, 1957, appellants paid to the State Treasurer the full amount of the tax accompanied by a written protest.

Article 7122, Rev.Civ.Stat. of Texas, as amended by Acts 1933, 43rd Leg. p. 581, ch. 192, Sec. 2b(20), Vernon's Ann.Civ.St. art. 7122, which is the amendatory act which the trial court held to be controlling, reads as follows:

"Art. 7122. Class E—Foreign bequest

"If passing to or for the use of the United States, to or for the use of any other person or religious, educational or charitable organization or institution, or to any other person, corporation or association not included

in any other classes mentioned in the preceding portions of the original Act known as Chapter 29 of the General Laws of the Second Called Session of the Thirty-eighth Legislature, the tax shall be: * * *

"Provided, however, that this Article shall not apply on property passing to or for the use of the United States or any religious, educational or charitable organization when such bequest, devise or gift is to be used within this State."

As amended by Acts 1955, 54th Leg., p. 1032, ch. 389, which is the amendatory act appellants urge as controlling, said Art. 7122 reads as follows:

"If passing to or for the use of the United States, to or for the use of any other person or religious, educational or charitable organization or institution, or to any other person, corporation or association not included in any of the classes mentioned in the preceding portions of the original Act known as Chapter 29 of the General Laws of the Second Called Session of the 38th Legislature, the tax shall be: * * *

"Provided, however, that this Article shall not apply on property passing to or for the use of the United States, or to or for the use of any religious, educational or charitable organization, incorporated, unincorporated or in the form of a trust, when such bequest, devise or gift is to be used within this State. The exemption from tax under the preceding provisions of this Article shall, without limiting its application under other appropriate circumstances, apply to all or so much of any bequest, devise or gift to or for the use of the United States, or a religious, educational or charitable organization, which is, in writing and prior to the payment of the tax, irrevocably committed for use exclusively within the State of Texas or transferred to a

religious, educational or charitable organization for use exclusively within this State."

Section 2 of the amendatory Act of 1955 above quoted reads as follows:

"The provisions of this Act shall apply only in respect to a decedent dying after the passage of this Act."

Article 7122–a, V.A.C.S., which became effective May 16, 1957, reads as follows:

"Art. 7122–a. Applicability of art. 7122.

"The provisions of Article 7122, Revised Civil Statutes of Texas, 1925, as amended by Acts of the 43rd Legislature, Regular Session, Chapter 192, and by Acts of the 54th Legislature, Regular Session, 1955, Chapter 389, shall apply to the bequests, devises and/or gifts of decedents dying after June 3, 1955, being the date on which the Governor of Texas approved the amendatory Act last mentioned."

Appellants contend that the Act of 1955 applies in the instant case even though the decedent died prior to the effective date of this act, consequently the devise and bequest in question is exempt from tax because prior to the payment of the tax the Foundation in writing irrevocably committed the devise and bequest for use exclusively within the State of Texas as contemplated by the exemption provisions of this Act. The contention of appellants that the Act of 1955 applies is based on three separate and independent grounds which are listed below and then discussed separately in the order listed:

(1) The Act of 1955 applies because Section 2 of this Act makes it applicable to the estate of decedents dying after the passage of this Act and appellants try to show that the words "after the passage of this Act" were intended by the Legislature to mean after approval of the Act by the Governor. As noted above, the

Governor approved the Act on June 3, 1955, and the decedent died during the month of July thereafter.

(2) The Act of 1955 was intended to apply in all cases where the tax had not been paid at the time it became effective as law, regardless of the date of death, because it provides:

"The exemption from tax * * * shall * * * apply to all or so much of any bequest, devise or gift * * * which is, in writing and prior to the payment of the tax, irrevocably committed * * *"

(3) The Act of 1955 is applicable in the instant case by virtue of the provisions of Article 7122–a, which are hereinabove set out.

Appellees take the position that the tax liability was controlled by the provisions of Article 7122, as amended by Acts 1933, as existing prior to the effective date of its amendment in 1955, and that the Foundation was not entitled to total exemption and that the controlling fact is that the will did not require the Foundation to use the bequest within the State.

Prior to its amendment in 1955, Article 7122—Class E, provided an exemption for property passing "to or for the use of * * any religious, educational or charitable organization when such bequest, devise or gift is to be used within this State."

In Presbyterian Church in U. S. v. Sheppard, Tex.Civ.App., 198 S.W.2d 282, er. ref., it was held that the requisite limitation to use within this State be expressed in the will.

The 1955 amendment to Article 7122, provided that property passing to religious, educational or charitable organizations could gain exemption from inheritance taxes even though the instrument creating the transfer did not require that the charitable gift be used within the State of Texas, by irrevocably committing such gift to use

within the State prior to the payment of inheritance taxes.

■ In this instant case Mr. Oldham died July 19, 1955. The 1955 amendment contained an emergency clause, but did not receive a ⅔rds vote necessary to make the Act immediately effective. The Legislature did not adjourn until June 7, 1955 and the amendment did not become effective until ninety days after adjournment, or September 5, 1955.

Section 2 of the 1955 Amendment provides: "The provisions of this Act shall apply only in respect to a decedent dying after the passage of this Act."

Appellants in discussing the phrase "after the passage of this Act" contend that such phrase means after approval by the Governor, which occurred on June 3, 1955, prior to the death of the decedent.

In Scales v. Marshall, 96 Tex. 140, 70 S.W. 945, our Supreme Court held that "Within twelve months from and after the passage of this act," meant twelve months after the Act took effect, rather than after its enactment.

This rule was followed in Shook v. Laufer, Tex.Civ.App., 100 S.W. 1042, er. ref.

■ Appellants say that the statutes involved in the above cases were not tax statutes. We are unable to distinguish these cases because of the general rule that the law in force at the time of the death of a decedent controls as to the taxability of inheritances and devises.

85 C.J.S. Taxation § 1133, p. 875.

■ The term "passage of this Act" appearing in the body of a legislative enactment as describing the time element which brings facts or conditions within its operation means the time when the Act goes into effect rather than the time of its enactment or approval.

United States In re Famolaro, D.C., 247 F. 596 and cases such as Consolidated Motors v. Skousen, 56 Ariz. 481, 109 P.2d 41, 132 A.L.R. 1040, and other cases cited therein.

Appellants take the position that the plain and ordinary meaning of the words "passage of this Act" is the date the Act receives the final sanction to make it a law, such as the approval of the Governor, and cite a number of cases such as Cordiner v. Dear, 55 Wash. 479, 104 P. 780, and cases cited therein.

■ We recognize that a primary rule of construction of statutes is to ascertain and give effect to the intent of the legislative body.

There could be a serious question as to the constitutionality of the 1955 and 1957 amendments if either be construed as applying to the estates of decedents prior to the effective date of the Act as being in violation of Sections 51 and 55 of Article III, Texas Constitution, prohibiting the releasing of a liability, etc., to the State, or making any grant of public money, etc.

■ Inheritance taxes are imposed upon the privilege of succession. Cahn v. Calvert, Tex., 321 S.W.2d 869.

Article 7131, V.A.C.S., provides that upon the devolution of the property the tax shall be a lien upon such property from the death of the decedent until paid. The lien attaches before any assessment is made, whereas by Section 15, Article VIII, ad valorem tax becomes a lien when the annual assessment is made.

In re Voorhees' Estate, 123 N.J.Eq. 142, 196 A. 365 (Prerogative Court of N.J.1938) affirmed 121 N.J.L. 594, 3 A.2d 891 (N.J. Sup.Ct.) affirmed 124 N.J.L. 35, 10 A.2d 650, 651 (Ct. of Errors and Appeals) it was held that the statute which purported to exempt from inheritance taxes devises or bequests to educational institutions, and to make such exemption applicable retro-actively to a stated date was unconstitutional as violative of a provision of the Constitution forbidding the donation of land or appropriation of money to or for the use of any society.

See In re Skinker's Estate, 1956, 47 Cal. 2d 290, 303 P.2d 745, 62 A.L.R.2d 1137.

The 1957 amendment Acts 1957, c. 236 is designated as Article 7122-a and provides that Article 7122 with its amendments shall apply to bequests, devises and/or gifts of decedents dying after June 3, 1955, and in Section 3 recites that there is confusion in respect to decedents dying prior to the effective date of the 1955 amendment, but after it was approved by the Governor, creates an emergency, etc.

■ The apparent purpose of the enactment of the 1957 amendment was to make an Act of a prior Legislature effective immediately on its approval by the Governor, even though said Act had not been passed in the manner required by the Constitutional provision requiring a two thirds vote.

Such an effort could not be availing because one Legislature has no power to construe the Acts or declare the intentions of a prior legislative session.

Rowan Oil Co. v. Texas Employment Commission, 152 Tex. 607, 263 S.W.2d 140.

We do not believe that the case of G.A. C. Halff Foundation v. Calvert, Tex.Civ. App., 281 S.W.2d 178, 182, er. ref. n. r. e., is analogous with the present case.

In the Halff Case the court held that:

"A power of appointment is an 'authority conferred by one person by deed or will upon another (called the donee) to appoint, that is to select and nominate the person or persons who are to receive and enjoy an estate or an income therefrom or from a fund, after the testator's death, or the donee's death, or after the termination of an existing right or interest.' * * *

"In legal contemplation, therefore, title passed directly from the testator, G.A.C. Halff, to the appointee, G.A.C. Halff Foundation, as of the effective date of the will."

The court cited the Presbyterian Church case supra but did not overrule it.

We have given careful consideration to the authorities and cases cited by appellant but believe that the Trial Court correctly construed the statutes and that its judgment should be affirmed.

The judgment of the Trial Court is affirmed.

HUGHES, Justice.

I respectfully dissent.

My concern is with the 1957 Amendment (Art. 7122–a, V.A.C.S.), copied in the majority opinion. This amendment, if valid, applies to this case under the stipulated or proved facts.

That this amendment is retrospective or retroactive in its present application is of itself of no consequence, since under Art. 1, Sec. 16, of the Texas Constitution prohibiting the making of a "retroactive law" a statute cannot be said to be a "retroactive law" unless vested rights are destroyed or impaired. McCain v. Yost, 155 Tex. 174, 284 S.W.2d 898. No one's vested rights are involved here unless it be the State's. It seems to be generally held that where a State enacts retroactive legislation impairing its own rights, it cannot be heard to complain on constitutional grounds. Greenway's Case, 319 Mass. 121, 65 N.E. 2d 16. See also Sweeney v. State, 251 N.Y. 417, 167 N.E. 519, People v. Frisbie, 26 Cal. 135, Hervy v. McKay, 164 Wash. 526, 3 P. 2d 145, 77 A.L.R. 1025, Jackson v. State, 261 N.Y 134, 184 N.E. 735.

This subject will not be developed further because the State does not base its case on this provision of the Constitution (Texas) rather it relies upon Sections 51 and 55 of Art. III of that instrument.

Section 51 provides, in part, that:

"The Législature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever * * *"

and Sec. 55 provides in part that:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, * * *"

These constitutional provisions have been construed in Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576, 583, in an opinion by Judge Smedley in which, after reviewing many prior decisions, he stated:

" * * * the decisions which have been discussed construe these sections of the Constitution as forbidding gifts, gratuities, or bounties, or the gratuitous releasing or extinguishing of obligations, * * *"

The question here presented is whether or not the extinguishment of appellants' tax liability to the State upon their compliance with the requirements of Art. 7122, supra, is gratuitous and a gift.

The State relies principally upon the following authorities: In re Bowen's Estate, 1908, 153 Cal. xviii, 94 P. 1055, Riley v. Howard, 1924, 193 Cal. 522, 226 P. 393, In re Clark's Estate, 1937, 105 Mont. 401, 74 P.2d 401, 114 A.L.R. 496 and In re Voorhees' Estate, 1935, 123 N.J.Eq. 142, 196 A. 365 affirmed 121 N.J.L. 594, 3 A.2d 891; 124 N.J.L. 35, 10 A.2d 650, 651.

In re Bowen's Estate need not be noticed in detail because it merely involved the effect of an Act repealing an inheritance tax statute upon taxes accrued to the State

but not paid. The Court held that under the Constitution of California:

"* * * it is not within the power of the Legislature, either by the repeal of the law in virtue of which the right vested, or by any other means, to grant or donate it to the successor in estate or to any other persons."

Riley v. Howard followed the ruling in Bowen's Estate and a review of it would not be helpful.

In re Clark's Estate is fully explained in this summary taken from its report in 114 A.L.R. at page 496:

"Where title to a decedent's property vests immediately at his death in his legatees or distributees, so that liability to inheritance tax attaches at that time, a statute enlarging permissible deductions in determining the state inheritance tax is, in so far as it permits such deductions in the case of estates of persons dying before its enactment which remain undistributed on its effective date, in conflict with the constitutional provision that no obligation held by the state shall ever be remitted, released, or in any way diminished by the legislature, nor shall such liability be extinguished except by the payment thereof into the proper treasury."

It is obvious that these cases are not in point here because in none of them is there any consideration moving from the taxpayer to the State for the release of or reduction in the taxes already accrued.

In re Voorhees' Estate, is a more important case. The principal opinion is found in 196 A. 365, 366, the other opinions cited being memorandum opinions.

In this case Elizabeth R. Voorhees died September 21, 1924, and a transfer inheritance tax was assessed against her estate in respect of a legacy in her will in favor of the New Jersey College for Women. Effective March 13, 1925, P.L.1925, c. 102,

New Jersey passed an Act which exempted from inheritance taxes property passing by devise or bequest since July 1, 1924,

"* * * to or for the use of any institution solely educational for whose benefit there may have been or may hereafter be appropriations made by the Legislature of this State."

Concededly the requirements of this provision were met and the Court stated the problem presented in this language:

"The sole question on this appeal is as to whether or not this exempting statute, in so far as it is intended to, and does affect transfers which occurred prior to its enactment, is constitutional. More specifically the issue is narrowed by the briefs of the parties to a determination as to whether or not the statute, to the extent of such expressed retroactive operation is in violation of Article 1, paragraph 20, of the Constitution of this state in that it operates to donate moneys of the state to a private corporation. If the statute be unconstitutional in this respect, the tax must be affirmed; otherwise it must be set aside in toto."

The constitutional provision referred to by the Court reads:

"No donation of land or appropriation of money shall be made by the State * * * to or for the use of any society, association or corporation whatever." N.J.S.A.Const.1844, art. 1, par. 20, as added in 1875.

After holding that upon the death of Elizabeth Voorhees a vested right accrued to the State in the taxes due the Court proceeded, and we quote:

"In Rutgers College v. Morgan, 70 N.J.L. 460, 57 A. 250, 255, the Supreme Court declared it was competent for the Legislature to establish an agricultural college at Rutgers and to support it out of the state's general fund. The court specifically held that

legislation on that subject is not infirm by reason of the constitutional provision against private, special, or local legislation, or by reason of the further provisions of paragraph 20, art. 1.

"In the words of the court: 'This provision, as well as that relating to special laws, does not bar instrumentalities for public education provided by the state and under its control by general laws, where the appropriation is made for such schools. They were designed as an insurmountable barrier to giving free state aid, and to donations to private or sectarian schools, and should be rigidly enforced, but they were not intended to narrow or circumscribe the legislative power to furnish facilities by general laws for public education under its own supervision."

The Court then stated:

"It is to be observed, however, that these determinations go no further than to hold that grants or appropriations made by the Legislature to corporations in consideration of services rendered or to be rendered to or for the state, or even in consideration of a moral obligation to reimburse corporations for services rendered or materials supplied to or for the benefit of the public, do not contravene the constitutional provision sub judice. They do not hold that a legislative grant or appropriation may be made, purely as a gift, to any corporation whatever (whether charitable, educational or of any other nature) without violating that provision."

Emphasizing that the transaction must constitute a gift the Court said:

"A gift of public funds or property to a private corporation is unconstitutional whether made directly or indirectly; and the annulling by the Legislature of a financial obligation due from such corporation to the state the right to which has theretofore already become fixed and vested in the state, is (unless supported by some legal, equitable, or moral consideration therefor) such a gift, and hence invalid.

"* * * The constitutional provision is general and all-comprehensive. It rested upon the appellant to establish before the commissioner, and it rests upon it to establish here, that the legislative grant thus effectuated was made upon due legal, equitable, or moral consideration and therefore does not come within the scope of the constitutional prohibition. This has not been done, * * *"

From the fact that the amount of taxes involved was not known to the New Jersey Legislature when the amendment was enacted the Court concluded:

"Consequently the Legislature did not form any judgment, because without that knowledge it could not form any judgment, as to whether a fair consideration, legal or moral, had been received for the grant which would be indirectly effectuated.

"* * * It is evident, therefore, that the Legislature did not, because it could not, include this retroactive provision in the statute with any idea, intent, or purpose that it was thereby making fair and reasonable compensation, to the beneficiaries who might thereby be affected, in consideration of and return for services performed or materials supplied under circumstances which imposed upon the state some legal or moral obligation."

The import of this case is, to me, more to the advantage of the appellants than it is to the State. If the Court had found an adequate legal or moral consideration for the exemption its decision may well have been different although the constitutional provision there under scrutiny had previously been judicially described as an "insurmountable barrier" to giving free State aid to private or sectarian schools.

Our Art. 7122 was before the courts in Halff Foundation v. Calvert, 281 S.W.2d 178, 181, San Antonio Court of Civil Appeals, writ ref., N.R.E. The question presented here was not in that case but Justice Norvell, now on the Supreme Court, in writing for the San Antonio Court in discussing this statute said:

"The Legislature has thus decided that the greater good may be served by exempting certain property from taxation, considering the use to which it is dedicated. A use of property which alleviates a burden which the state or its political subdivisions would otherwise necessarily bear at public expense, or a use thereof which fulfills or accomplishes the generally accepted charitable objectives of the people of the State, is recognized as a proper subject of tax exemption by specific legislative enactments." [1]

I believe that this language sustains the additional conclusion "and is a good consideration for the release of taxes due but unpaid."

In City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818, 819, the validity of an Act granting State taxes to the City of Aransas Pass for a period of years for the purpose of building sea walls was sustained the Court saying:

"The act makes no grant of public money as forbidden by section 51 of article 3 of the Constitution. The state here bestows no gratuity."

In Bexar County v. Linden, 110 Tex. 339, 220 S.W. 761, the Court, in sustaining an Act requiring district attorneys to pay excess fees into the County Treasury, said:

"The giving away of public money, its application to other than strictly

governmental purposes, is what the provision is intended to guard against. The prohibition is a positive and absolute one except as to a distinctive class to whom the State is under a sacred obligation. * * *

"If, therefore, the effect of the statute is to bestow funds of the State upon counties of the State as a gratuity, or for uses not related to the State's governmental duties, it would be invalid. On the other hand, if its effect is to but apply such funds to the uses of the State as a government, there can be no reason for holding it void."

It seems to me that there is no practical distinction between the language of Justice Norvell when he speaks of this Act as alleviating "a burden which the State or its political subdivisions would otherwise necessarily bear at public expense" and a prior Supreme Court decision (Bexar County v. Linden) which says "if its (statute) effect is but to apply funds to the uses of the State as a government, there can be no reason for holding it void."

All doubts should be resolved in favor of a statute's constitutionality. The Legislature is the policy making arm of our Government. It has, in this instance, plainly and, in my opinion legally, exercised its prerogative in legislating for the public good. The beneficial results here are about eight to one. $800,000 will, if the legislative Act is sustained, be devoted to charitable use in Texas. The loss to the State's general fund will be $100,000. The wisdom of the Legislature is exemplified by this humane and just enactment. The will of the Legislature as expressed in this statute should not only be respected, it should be applauded.

1. There is little practical difference between a tax exemption and a tax remission; one looks to the future and the other to the past, but in dollars and cents they are identical.