

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

March 1, 1967

Honorable Robert S. Calvert      Opinion No. M-34
Comptroller of Public Accounts
Austin, Texas      Re: Whether intangible prop-
     erty belonging to a non-
     resident citizen but
     located in Texas is subject
     to inheritance tax upon
Dear Mr. Calvert:      the non-resident's death.

         In connection with your request for an opinion of this
Office on the above captioned matter, you have supplied us
with the following information:

> "[The Decedent] died on April 28, 1962, at
> which time she was a non-resident citizen
> of the United States and resided in the
> Republic of Mexico, was not engaged in bus-
> iness in the State of Texas, and had money
> on deposit in banks doing business in Texas,
> and was the owner of shares or share accounts
> in savings and loan associations doing business
> in Texas described as follows:

First National Bank in Dallas,
     Dallas, Texas
     Checking Account No. 48 0618 8      $ 1,011.97

Savings Accounts

First National Bank in Dallas,
     Dallas, Texas
     Account No. 180643      50,375.00

Alamo National Bank, San Antonio,
     Texas
     Account No. 62223      50,375.00

Frost National Bank of San Antonio,
     San Antonio, Texas
     Account No. 1218336      50,250.00

Dallas Federal Savings and Loan
    Association, Dallas, Texas
    Account No. A1212                   60,000.00

Farm and Home Savings Association,
    San Antonio, Texas
    Account No. 7-22804               25,000.00

First Federal Savings and Loan
    Association, San Antonio, Texas
    Account No. f7673                 25,000.00

Note Receivable

Ola General de Aceptaciones,
    Monterrey, N.L., Mexico,
    note dated January 12, 1962,
    interest 8%                     20,000.00

    Interest accured from January 12,
    1962, to April 28, 1962          466.67

                                 $282,478.64

"In view of your Opinion No. C-8, this Department has included the above described assets for inheritance tax purposes and levied a tax thereon in the amount of $7,794.70, to which the attorney for the estate, . . . does not agree, because of the passage of Senate Bill 436 by the 58th Legislature which became effective on May 14, 1963. This Bill provided a retroactive provision similar to Senate Bill 344, Acts of 1959, which has been passed on by the Austin Court of Civil Appeals, State of Texas, et al. vs. F. W. Beazley, 403 SW (2nd) 905, n.r.e.

"We are furnishing you herewith a letter brief from [the attorney] dated January 11, 1967, stating his position, and we kindly ask that you advise this Department on the controversy in question."

We quote the following provisions from Senate Bill 436, Acts 58th Leg., 1963, ch. 158, p. 445:

"Art. 14.28. Exemptions Applicable to Non-Residents

"'The provisions of this Chapter shall not apply to money on deposit in any bank doing business in Texas or to shares or share accounts in any savings and loan association doing business in Texas owned by non-residents of Texas who are citizens of a foreign country and who are not engaged in business in Texas, or owned by non-resident citizens of the United States who reside in a foreign country and who are not engaged in business in Texas.'

"Sec. 2. The provisions of this act shall apply in respect to a decedent dying before the effective date of this Act if the tax imposed by Chapter 14 of Title 122A, Taxation-General, Vernon's Texas Civil Statutes, has not been paid prior to the effective date of this Act, and shall also apply in respect to a decedent dying after the effective date of this Act.

"Sec. 3. The fact, that there is a question whether money on deposit in Texas banks and other intangible personal property owned by non-residents of Texas who are citizens of a foreign country and who are not engaged in business in Texas, or owned by non-resident citizens of the United States who reside in a foreign country and who are not engaged in business in Texas is taxable under the provisions of Chapter 14 of Title 122A, Taxation-General, Revised Civil Statutes of Texas, and the fact there is confusion and doubt as to whether such property is taxable under the provisions of such Chapter, and the importance of this matter

> and the crowded condition of the calendar
> in both Houses, create an emergency and
> an imperative public necessity that the
> Constitutional Rule requiring bills to be
> read on three several days in each House
> be suspended, and said Rule is hereby
> suspended; and that this Act shall take
> effect and be in force from and after its
> passage, and it is so enacted."

In the letter brief submitted in connection with your request, it is pointed out that the 1965 revision carried forward only the first Section of Article 14.28 as Article 14.015. Acts 59th Leg., 1965, ch. 402, § 4, p. 830. It is further pointed out that the Savings Clause of said Act declared that "The repeal of any laws by this Act shall not affect or impair any act done or obligation, right,[1] . . . accrued or existing under the authority of the law repealed . . ."; and that in view of this provision of the Savings Clause, the omission of Section 2 of the former Article 14.28 is immaterial. We reach this question only if we determine that exemption could have been accorded the Decedent in this case under Section 2. The attorney for the taxpayer has advanced several distinctions between the case of Calvert v. Beazley, 403 S.W.2d 905 (Tex.Civ.App. 1966, error ref., n.r.e.) and the instant case. We will discuss the alleged distinctions as they arise in the following summation of Beazley.

In Beazley, the Decedent died on December 28, 1962. He devised his residuary estate to Beazley Foundation, Inc., a Virginia charitable corporation, hereinafter referred to as The Foundation. At the date of Decedent's death, and at all times material thereto, under the laws of the State of Virginia, all bequests to charitable corporations, wherever situated, were exempt from inheritance taxes.

Exemption was claimed under Acts 58th Leg., 1963, R.S. ch. 77, Sec. 1, p. 130, which became effective April 29, 1963, approximately four months after the date of the death of the Decedent. This Amendment reads as follows:

---

[1] Emphasis supplied throughout.

"Provided, further, that this Article shall not apply to property passing to or for the use of any religious, educational or charitable organization, incorporated, unincorporated or in the form of a trust, if (either at the time the property passes or at any time prior to the payment of the tax) the laws of the jurisdiction under which such organization is organized or is operating provide an exemption from death tax of any character with respect to property passing (1) to or for the use of such an organization, or (2) to or for the use of such an organization organized or operating within the State of Texas, or (3) to or for the use of such an organization organized or operating within any other jurisdiction which grants a reciprocal exemption. For the purposes of this paragraph, jurisdiction means any state or territory of the United States or the District of Columbia."

At the date of the Decedent's death, the provisions of Article 14.06 pertaining to charitable exemptions did not contain the provisos underscored above; but The Foundation relied on Article 14.07 as being applicable to the 1963 Amendment to Article 14.06. The court in Beazley disposed of this contention at page 908.

"Article 14.07 was enacted as Section 2 of S.B. No. 344, ch. 186, Acts 1959, 56th Leg., R.S. p. 405. Section 1 of S.B. No. 344 amended what was then Article 7122 of the Revised Civil Statutes of Texas of 1925, as last amended, by providing an exemption for property passing 'to or for the use of a religious, educational, or charitable organization which conducts its operations on a regional basis, one such region of which includes the State of Texas, or any part thereof.'

"Section 2 of S.B. No. 344 reads as follows:

"'The provisions of this Act shall apply in respect to a decedent dying before the effective date of this Act

- 153 -

> if the tax imposed by Article 7122, as here-
> tofore amended, has not been paid prior
> to the effective date of this Act, and shall
> also apply to a decedent dying after the
> effective date of this Act.' (Italics ours.)
>
> "The plain language of Section 2
> limited its application to the new exemption
> therein provided -- an exemption not appli-
> cable to or claimed by appellees."

The court traced the Legislative history of Article
14.07 and concluded that it also supported the foregoing
conclusion.

We are therefore in agreement with the following
asserted distinction: Beazley involved different exemption
provisions from the provision involved in this case.

The following portions of the court's opinion in
Beazley deal with its conclusion that the law in force at
the time of a decedent's death is controlling:

> "It is our opinion that the laws in
> effect when decedent died must control.
> The following authorities so hold. Morris
> v. Calvert, 329 S.W.2d 117, Austin, writ
> ref., n.r.e., 85 C.J.S. Taxation § 1133,
> a and e.
>
> "The following cases hold that it is
> the relationship of the parties or their
> status as of the time of a decedent's
> death which controls their classification
> for inheritance tax purposes under the
> laws of this State. Lewis v. O'Hair,
> 130 S.W.2d 379, Austin, n. w. h., Johnson
> v. Davis, 198 S.W.2d 129, Austin, writ ref.,
> n.r.e., Hamilton v. Calvert, 235 S.W.2d
> 453, Austin, writ ref., Cahn v. Calvert,
> 159 Tex. 385, 321 S.W.2d 869.
>
> "These cases illustrate the principle
> that in the assessment of death taxes
> death of decedent is the critical event.

"The scheme of our inheritance tax laws is stated in Calvert v. Fort Worth National Bank, 163 Tex. 405, 356 S.W.2d 918, as follows:

"'Historically, death duties "in all countries rest in the essence upon the principle that death is the generating source from which the particular taxing power takes its being, and * * * it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." See Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969. From a reading of our inheritance tax statutes, we think the basic plan and purpose of the Legislature was to levy the tax upon the privilege of succeeding to property belonging to a decedent at the time of his death. Article 14.01 speaks of property passing by will or by the laws of descent or distribution, whether belonging to inhabitants of this State or to persons who are not inhabitants. The only property that is ordinarily regarded as passing by either will or descent is that which was owned by the testator or intestate at the time of his death.'

"Article 14.16, Vol. 20A, Taxation-General, V.A.T.S., provides, in part that inheritance taxes 'shall be a lien upon such property, (see Art. 14.01, id.) from the death of the decedent until paid.'

"This Article is consistent with the stated plan of these tax laws in Fort Worth National Bank, supra, and demonstrates that the date of decedent's death is the date from which the rights of the parties emanate and generate."

We do not agree with the second asserted distinction that the foregoing principles are applicable only to charitable institutions as opposed to the exemption provided by Article 14.28.

The third asserted distinction that Beazley "was actually decided on the basis that the claim for exemption was urged by it under the provisions of Article 14.06 (Acts of 1963) and Article 14.07 (Acts of 1959) and that Article 14.07 applied only to Article 14.06 (Acts of 1959) and did not apply to Article 14.06 (Acts of 1963)." We think this distinction must be considered in connection with the plain holding in the first paragraph above quoted that the laws in effect when the decedent died must control. In the instant case, Article 14.28 was not in effect at the date of the Decedent's death.

We agree with the fourth assertion that Beazley did not expressly pass on the constitutionality of Article 14.07. The court so stated at page 908.

We quote the following excerpt from page 10 of the brief:

> ". . . it is our position that there was no inheritance tax law in effect in Texas on the date of Mrs. Woods' death on August 28th, 1962, applicable to money on deposit in banks doing business in Texas or to shares or share accounts in savings and loan associations doing business in Texas owned by non-resident citizens of the United States residing in a foreign country and who were not engaged in business in Texas, as was found by the Legislature as set out in Section 3 of Senate Bill 436, effective May 14th, 1963, (Article 14.28) as set out above."

It is further argued that Section 3 of Article 14.28 evidences an unequivocal recognition that a question existed as to the taxability of intangibles under situations covered by the statute. Attorney General's Opinion No. C-8 (January 31, 1963) held that intangible personal property located in Texas and owned by a non-resident alien is, upon the non-resident's death, subject to an inheritance tax under

the provisions of Chapter 14, Title 122A, Taxation-General, Vernon's Civil Statutes, Senate Bill 436, Acts 58th Leg., 1963, ch. 158, p. 445, became effective May 14, 1963. The caption of Senate Bill 436 states that it is amending said Chapter 14 "by adding thereto a new article relating to certain exemptions from the inheritance tax applicable to certain non-residents; . . ." Actually, we think the caption indicates a legislative recognition of taxability absent the specific provision for exemption.

However, regardless of legislative knowledge or intent, we come ultimately to the constitutionality of Section 2 of Article 14.28. Although neither Beazley nor the case of Morris v. Calvert, 329 S.W.2d 117 (Tex.Civ.App. 1959, error ref., n.r.e.) are specifically controlling on this point, we think an analysis of Morris, together with other authorities hereinafter discussed, supports our conclusion that this statutory provision is violative of both Sections 51 and 55 of Article III of the Texas Constitution.

Morris, cited at page 906 in Beazley, was concerned with the following facts. The decedent had devised and bequeathed property to a charitable foundation organized in the form of a trust. Prior to its amendment in 1955, Article 7122, Vernon's Civil Statutes, as amended by Acts 43rd Leg., 1933, ch. 192, Sec. 2b(20), p. 581, provided an exemption for property passing "to or for the use of any religious, educational or charitable organization when such bequest, devise or gift is to be used within this State." This provision was construed in Presbyterian Church in the U.S. v. Shepperd, 198 S.W.2d 282 (Tex.Civ.App. 1946, error ref., n.r.e.), as requiring the requisite limitation to use within this State to be expressed in the will. No such limitation was expressed in the decedent's will; and, under the terms of the trust indenture, The Foundation was not limited in its operation to the State of Texas.

Senate Bill 266, Acts 54th Leg., 1955, ch. 389, p. 1032, referred to throughout as the 1955 Amendment, provided, in effect, that property passing to charitable organizations could gain exemptions from inheritance taxes, even though the instrument effectuating transfer did not require the charitable

gift to be used within this State if prior to the payment of inheritance taxes, the property is irrevocably committed to use within the State. Section 2 of the 1955 Amendment provided as follows: "The provisions of this Act shall apply only in respect to a decedent dying after the passage of this Act." It was contended that the phrase "after the passage of this Act" meant after approval by the Governor, which had occurred prior to the death of the decedent, rather than the effective date of the Act, which occurred subsequent to the death of the decedent. Morris held that the phrase in question meant the effective date of the Act.

The 1957 amendment to Article 7122 amended the 1955 amendment by providing that it "shall apply to the bequests, devises and/or gifts of decedents dying after June 3rd, 1955, being the date on which the Governor of Texas approved the Act last mentioned." Acts 55th Leg., 1957, ch. 236, § 1, p. 489. With regard to this amendment, at page 122 of the majority opinion in Morris, the court made the following comment:

> "There could be a serious question as to the constitutionality of the 1955 and 1957 amendments if either be construed as applying to the estates of decedents prior to the effective date of the Act as being in violation of Sections 51 and 55 of Article III, Texas Constitution, prohibiting the releasing of a liability, etc., to the State, or making any grant of public money, etc."

This statement in recognizing the constitutional problem is significant in view of the dissenting opinion.

In this dissent, Mr. Justice Hughes discussed Sections 51 and 55 of Article III[2]/ of the Texas Constitution, and

---

[2]/ Section 51 of Article III prohibits the Legislature from making any grant or authorizing the making of any grant of public money "to any individual, association of individuals, municipal or other corporation whatsoever . . . ."

Section 55 of Article III prohibits the Legislature from releasing or extinguishing "in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State . . . ."

concluded that they were not violated, because he found a consideration moving from the taxpayer to the State for the release of or reduction in a tax already accrued. Mr. Justice Hughes thought that the State would receive far greater benefit from the commitment to use within this State (conditioned upon exemption of the devise and bequest) than from collecting the tax.

Article 14.28 could not possibly be construed as purporting to cancel the tax liability for a consideration to be furnished by the taxpayer to the State for the release or deduction of taxes already accrued.

It is obvious that Section 2 of Article 14.28 was not intended to provide for a tax remission (or even a tax exemption) as a quid pro quo for the performance of some act (such as committing property to use within the State as in Morris). By its express terms, it is intended to broaden its effect so as to make a gift to a selected group of taxpayers.

There is a vast difference between a remission of tax liabilities which have already accrued and which the Legislature is prevented from releasing under the plain terms of Sections 51 and 55 and a tax exemption which, if valid in other respects, may foreclose the accrual of future tax liabilities.

In State v. City of Austin, and State v. City of Dallas, 160 Tex. 348, 331 S.W.2d 737 (1960), Mr. Justice Walker, speaking for a unanimous court, said at page 742:

> "After the occurrence of events which under the law then existing give rise to an obligation on the part of an individual or corporation to the state, the Legislature has no power to release or diminish that obligation without consideration. Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265. See also Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419. Moreover, the use of public money to pay a claim predicated on facts which generate no state liability constitutes a gift or donation in violation of our Constitution. See Thompkins v. Williams, Tex.Com.App., 62 S.W.2d 70.

> Respondents could not, therefore, be reimbursed for all or any part of the expense incurred by them in relocating their lines prior to the adoption of House Bill 179. But the statute does not operate retrospectively, and respondents claim no right to reimbursement for costs incurred before it became effective.
>
> " . . .
>
> " . . . The purpose of this section [Article III, Section 51] and of Article XVI, Section 6, of the Constitution is to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever. See Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738. . . ."

The difference between the instant case and the City of Austin case, supra, is that if Section 2 of Article 14.28 is valid, its only possible operation is a retrospective one.

Other cases distinguishing between the prohibited gratuity and a grant or donation in furtherance of a public, governmental or state purpose are Road Dist. No. 4 Shelby County v. Allred, 123 Tex. 77, 68 S.W.2d 164 (1934); City of Aransas Pass v. Keeling, 121 Tex. 339, 247 S.W. 818 (1923); City of Beaumont v. Priddie, 65 S.W.2d 434, 440 (Tex.Civ. App. 1933); Jefferson County v. Board of County and District Indebtedness, 143 Tex. 99, 182 S.W.2d 908 (1944).

Prior to the effective date of Article 14.28, there was an unconditional accrual of inheritance taxes in this case. The terms "indebtedness, liability or obligation" as used in Section 55 mean an accrued indebtedness, a fixed liability or obligation which is due and owing to the State at the time the Legislature purports to extinguish it. Cf. State v. City of Austin, supra. This provision of the Constitution is inapplicable whenever the "indebtedness, liability or obligation" has not accrued or is in any way conditional or contingent. See State v. Pioneer Oil and Refining Company, 292

S.W. 869 (Tex.Comm. App. 1927); State v. Tidewater Associated Oil Company, 159 S.W.2d 192 (Tex.Civ.App. 1942, error ref.); Rowan Oil Co. v. Texas Employment Commission, 152 Tex. 607, 263 S.W.2d 140, 144 (1953).

Courts in other jurisdictions having similar constitutional provisions to the Texas ones under consideration have recognized that when the right to a succession tax becomes vested in the State, the Legislature cannot, either by repeal of the law under which the right vested or by any other means, grant or donate it to the successor in estate or any other person. In re Bowen's Estate, 94 P. 1053 (Cal. Sup. 1908); Riley v. Howard, 226 P. 393 (Cal.Sup. 1924); In re Voorhees' Estate, 195 A. 365 (Prerogative Court of N. J., 1938) aff'd. 3 A.2d 891 (N.J.Sup.Ct.) aff'd. 10 A.2d 651 (Ct. of Errors and Appeals); Re Clark, 74 P.2d 401 (Mont.Sup. 1937); Re Skinker, 303 P.2d 745 (Cal.Sup. 1956).

You are therefore advised that the retroactive provision of Section 2 of Article 14.28 is unconstitutional for all the foregoing reasons. Therefore no exemption from inheritance taxes can be allowed under its unconstitutional provision.

## S U M M A R Y

Article 14.28, V.C.S., exempts from inheritance taxes "money on deposit in any bank doing business in Texas or to shares or share accounts in any savings and loan association doing business in Texas owned by non-residents of Texas who are citizens of a foreign country and who are not engaged in business in Texas, or owned by non-resident citizens of the United States who reside in a foreign country and who are not engaged in business in Texas." Section 2 of this Article makes the following statement: "The provisions of this Act shall apply in respect to a decedent dying before the effective date of this Act if the tax imposed by Chapter 14 of Title 122A, Taxation-General, Vernon's Texas Civil Statutes, has not been paid prior to the effective date of this Act . . . ." That portion of Section 2, next above quoted, is unconstitutional in that it violates Sections 51 and 55 of

Article III of the Texas Constitution by attempting to extinguish a liability which accrued to the State of Texas at the date of the decedent's death.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Marietta McGregor Payne
Assistant Attorney General
MMP/fb

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-Chairman
Arthur Sandlin
Jack Goodman
Pat Bailey
Niel Williams

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.